## Case No. 2,440.

### CARR v. RICE.

[1 Fish. Pat. Cas. 198.]

Circuit Court, S. D. New York. April, 1856.

PATENTS—NATURE OF GRANT—UTILITY—COMBINATION—SPECIFICATION—DESCRIPTION—IDENTITY—INFRINGEMENT.

1. A patent is dealt with by the courts, as a grant by the legislature, in exchange for the equivalent to be received by the public, in the free enjoyment of the patented discovery, after the inventor's exclusive privilege expires.

2. The patent grant is bestowed in consideration of something new and valuable, contributed by the patentee to the public benefit. If the subject of the grant was already open to common use, he renders no equivalent for the privileges he obtains, and fails to fulfill the vital condition upon which he was authorized to enjoy them.

[Cited in Bliss v. Brooklyn, Case No. 1,544; Hussey v. Bradley, Id. 6,946.]

[See note at end of case.]

3. It matters not how the thought is acquired or how brought into action, whether by a sudden conjecture, or chance experiment, or by the labors and investigations of a whole life; or, that it proves pre-eminently serviceable and profitable to the industry and enjoyments of life, or only to a very inconsiderable amount.

4. The law secures to the patentee the right to the use of his machine, provided it consists of a new combination, although composed of parts well known, and in common use.

5. If the patentee fails to mention, in his specification, an addition which is indispensable to the use of his machine, it is fatal to the title set up by the plaintiff. But if the machine works well without the addition, or if it be a mechanical means incident to the construction of the machine, to be brought into use in special circumstances, or only for the quickening, or making more profitable, the operation of the machine, it is not to be regarded as an indispensable part of it, and need not be described or claimed in the specification.

[Cited in Dornan v. Keefer, 49 Fed. 463.]

6. Strong resemblances in external appearances, similarity of products or operation, are not, separately, tests of the identity of the plan, or purpose of machines; nor is a superiority in products, or in operation, in one over the other, proof of an essential difference; because the slightest change of a machine, which effects a real improvement in it, may be patentable, while great apparent variations may be only disguises, under which an older discovery is attempted to be employed and appropriated.

[Cited in Rapid Service Store Ry. Co. v. Taylor, 43 Fed. 252.]

7. The defendant can not embody in his machine the patented discoveries held by the plaintiff, nor entitle himself to use them, by adding improvements, or new inventions of his own or of others thereto.

8. A person purchasing property, against the right of another, when the owner was without evidence of his title, can not hold or use it, after the evidence of his superior right is acquired by the real owner. Patent interests are not distinguishable, in this respect, from other kinds of property.

At law. This was an action on the case [by John M. Carr against John Rice] tried before Judge Betts and a jury, to recover damages for the infringement of letters patent [No. 6,148] for "improvements in ma-

chinery for separating flour from bran," granted to Issachar Frost and James Monroe, February 27, 1849, and reissued, March 13, 1855 [No. 302].

The claims of the original patent were as follows: "Having thus fully described the construction. arrangement, and operation of the several parts of our machine, we will now add that we do not mean to claim to be the original inventors of a cylinder, nor of a combined punch and reticulated cylinder, nor of a cylinder covered with strips of punched sheet-iron and strips of leather filled with tacks, such as are used in smut machines, nor the arrangement of gearing by which the machine is propelled; but we do claim to be the original and first inventors of the combination and arrangement of the external, upright, stationary, close cylindrical case B, with the internal combined punched and reticulated upright stationary scourer and bolt B', B³, and revolving cylindrical scourer and blower C, constructed, arranged and operated in the manner and for the purpose herein fully set forth, by which the fine flour that usually adheres to the bran, after being subjected to the first bolting operation, is now completely separated from the bran and collected in the annular space between the cylindrical bolt and cylindrical case, from whence it descends through the segmental openings in the horizontal base, upon which the said bolt and case rest, into conducting spouts, as aforesaid, while the bran is blown from the interior of the bolt through a spout leading through the external case, as aforesaid, in the meshes of the bolting-cloth, being kept open by the pressure of air produced inside the combined cylindrical scourer and bolt, by the manner in which the oblique and radical and parallel wings are arranged on the revolving. scouring, and blowing cylinder, as above set forth.

The claims of the reissued patent were as follows: "I claim: 1st. The platform D (always at right angles with the sides of the bolt, when not made conical), or close horizontal bottom, when used in connection with upright, stationary, or revolving bolt for flouring purposes. 2d. The opening at D⁵ for the admission of a counter current of air through the bottom and into the bolts and the opening and bran-spout F, as described, in combination with the platform D. 3d. The upright, stationary bolt, or bolt and scourer combined, with its closed-up top, except for air and material; as in combination with first, second, and fourth, or either of them, or their equivalents, to produce like results in the flouring process. 4th. The use of the revolving. distributing, scouring, and blowing cylinder of beaters and fans, by which the material is distributed, scoured, and the flour blown through the meshes of the bolting-cloth."

The machine was for rebolting or dusting bran which had already passed through the bolt, and it was claimed that by its use a saving was effected of from two to three barrels per hundred. On the part of the defense it was contended that the invention was void for want of novelty and utility, and that the defendant did not infringe the patent.

Charles M. Keller, for plaintiff.
Charles Tracy and S. W. Holladay, for defendant.

BETTS, District Judge. This prosecution rests upon what is termed a patent right. You are aware that, by virtue of acts of congress, individuals can have secured to them, a property in an invention. It is not necessary to examine whether such property rests in natural right, or is derived from the donation of government. It is dealt with by the courts, as a grant by the legislature, in exchange for the equivalent to be received by the public, in the free enjoyment of the patented discovery, after the inventor's exclusive privilege expires.

In the maintenance of rights of this description, and defense of prosecutions upon them, questions arise, for the determination of courts and juries. of a complicated, and oftentimes. embarrassing character. We are brought to consider subjects not familiar to common experience; for few understand the theory and science, or scarcely the practical application of mechanical arts. The points raised in these investigations are complicated and intricate in their nature, and embarrassing, to persons most skilled in them, to understand clearly.

After the maturest study, courts are frequently perplexed in determining the just bearing and effects of the facts, upon which they are to decide in this class of cases, and this embarrassment must necessarily be shared by jurors.

The cardinal principle upon which patent laws rest is, that an individual is only entitled to appropriate to his exclusive control, that which he has, by his original invention, or discovery, first made known, and rendered useful. Accordingly to determine his exclusive title, it is necessary to ascertain what was before known to the public, and whether what he assumes to be his, is really made so, by being distinct from any thing before publicly used in that condition, and applicable to like purposes, and is rendered, by means of his invention, useful.

This always presents questions of great difficulty. both upon the point of utility, and more particularly as to how far public knowledge and experience have already reached, in respect to the discovery claimed.

These points are to be determined by a careful comparison of the description given by the patentees of their discovery, with the proofs of what had been described in books; because the law gives no effect to a patent for things worthless in themselves, or which the community could have used without the aid of the patentees. In this connection, it

will be borne in mind, that a patent can not be supported by proof that the invention was new to the patentees themselves, but the evidence must be satisfactory that they were actually the first, and original discoverers, of the thing patented. Their title is in no wise strengthened if their invention be proved to have been made at great expense of time, research, and money, even if they honestly believed it original with themselves, if in the end it is made to appear that others had previously known and used it. However ingenious the contrivance may be, and wonderful the processes performed by it, and puzzling to the mind to comprehend its arrangement, still, if, in the result, it turns out that neither the whole instrument, nor the combination of its parts, nor the results obtained by it, was first devised and adapted to practical purposes by the patentees, their patent can not stand.

Another indispensable prerequisite to the validity of a patent grant is that the patentees draw up and describe what is called a specification of their discovery, and file it in the patent office, setting forth and specifying the particulars of their invention plainly, and clearly; so that mechanics skilled in that branch of business, can construct the patented discovery from that description. The jury will bear in mind that the plaintiff establishes no right of action, unless it appears, upon the whole evidence in the case, that the patentees were really the original and first discoverers of the patented invention; that it is useful by producing some new manufacture, or some benefit by the method of manufacture, covered by the claim. None of these particulars less than the whole will sustain it.

It is manifest that these inquiries demand your judgment upon points exceedingly nice and intricate in their character, upon which, you perceive, witnesses of integrity, skill, and experience, have expressed widely differing opinions.

This action relates to an alleged discovery of a machine for separating flour from bran, after the same has passed through the usual bolting process. The patentees, in their specification, claim a discovery which introduces a valuable improvement into that branch of manufacture. The first question under the issue before you will be, What is the specific invention claimed by the plaintiff, or by the patentees? although the consideration of its utility may well be connected with that point.

The law does not require the patentees to prove their discovery to be useful to any eminent or large degree. It is sufficient if it produces an improved article, at less cost, or with more expedition, than other known methods; that renders the discovery useful, within the meaning of the patent laws.

The machine constructed and patented, and now the subject of this action, is familiarly called a bran-duster, and is represented and claimed by the patentees to be an improvement in "machinery for separating flour from bran." Its purpose and use is, to separate the remaining particles of flour which adhere to the bran, after the same has passed through the ordinary bolting process. The allegation and claim is, that this discovery secures that end more cheaply and perfectly than was before done, and effects a large saving of flour by freeing the flour from the bran, to which it adheres after passing through the ordinary bolts, and which would otherwise pass off with the feed.

The patentees do not claim to have invented a new machine, but to have contrived a new arrangement and combination of known parts of machinery, so as to produce, by its operation, a more beneficial result. The plan of construction and combination is set forth in the specification, and in the claims, with which that concludes.

The most noted parts are, an outer wooden case, which forms the exterior covering of the machine; an interior case of wire-gauze, tin, or other metal, perforated with holes, similar to an ordinary sifter, or sieve, forming a bolting cylinder, with both ends closed up, except for air and material—(in the model, this is stationary, although it is claimed, either stationary, or revolving, when thus used for flouring purposes)—and an upright cylinder of beaters and fans, having a distributing head, or table on its top, within the interior case or bolting cylinder. This cylinder is covered with strips of leather, having tacks, or nails without heads, projecting from the surface outward near to the sifter, and also with little wings of tin, or other substances, and of sufficient strength to bear the pressure of the air, so as to act as fans, when the cylinder is revolving rapidly.

Air is admitted freely through an aperture for the admission of the feed near the hopper, and some is also received through openings at its base, at the center, or at the discharge hole for the bran. The material or offal to be operated upon is received from the bolt (after the ordinary process of bolting is completed), and passed thence on to the head of the solid cylinder, and distributed by its centrifugal action equally around the periphery, and down the sides, and thus thrown out into the body of the case, and against the sifter inclosing it.

The solid cylinder is made to rotate with high speed, and, by aid of its appliances and velocity, a rapid circulation of air is created within the sifting case, and in that manner it is claimed, the flour and bran are suspended, and subjected to the double action of the beating, or whipping of the tacks, or pins attached to the cylinder, and the currents of air—the latter driving the flour against and through the sieve-covering—and the bran, by its gravity, falling to the bottom of the case. Arrangements are also proposed for removing the flour and bran from the machine, where they severally fall, by means of

spouts—the bran on the floor of the inside case, and the flour outside of the sifter.

The theory of the plan of operating is, by the combination of the machinery, in swift motion, to loosen the flour which adheres to the bran, when it is delivered out of the ordinary bolt, and to propel the flour through the sifter, by force of the currents of air alone, while the bran drops to the floor and through a hole in the bottom, by its gravity, and by that action to produce a complete separation of the flour and bran, cheaply, expeditiously, and with an important saving of flour.

The features of the plan are thus sufficiently stated, without seeking to be critically exact in all the details of the machine, to enable the jury, on the evidence, to determine whether the contrivance is worked out by a new and useful combination of its parts.

The law secures the patentees the right to the use of their machine, provided it consists of a new combination, although composed of parts well known, and in common use. Indeed, it is not to be expected, in this era of the mechanical arts, that a machine original, in all the instrumentalities it employs, can be produced.

To make their title good, the patentees must describe, fully and clearly, their whole invention, and the method of using it. If anything material, in respect to its construction or working, is omitted in their specification, they lose all claim to the exclusive use of their discovery.

It is admitted, on both sides, that the model, on the table before you, presents a true picture or representation of the discovery claimed by the patentees, in all its essential parts. Its plan and combinations have been substantially pointed out to you already; and it is for you to determine, upon consideration of the whole of the evidence, whether the invention is new and useful.

It is, however, proper to observe that the patentees need not specify the kind of power to be employed, or the method of applying it in working the machine. No particular mechanical means to those ends are claimed in the discovery, and they are accordingly at liberty to use any known to mechanics skilled in machinery of this character, and not requiring invention to prepare or apply them.

It is urged, that the description of the machine is vitally defective, in not pointing out the application of a knocker, or rapper to it, without which it can not be worked to any advantage, and which is, in fact, applied by the patentees to those they use or vend.

The office of the rapper is, from time to time, to strike the upper end of the sifter-cylinder, with force sufficient to jar, or shake off the flour adhering to its outer face—and so clogging the meshes, or perforations, as to prevent its being blown through, by the currents of air within. If the patentees always use that addition, and it is indispensable to the usefulness of the machine, their failing to mention it in their specification, is fatal to the title set up by the plaintiff. There is, however, conflicting evidence on this point, and the facts involved in the objection, are for the jury alone to decide. If the duster works well without that addition, or if it be a mechanical means incident to the construction of a duster, or bolters, to be brought into use in special circumstances, or only for the quickening, or making more profitable, the operation of the machines, it is not to be regarded as an indispensable part of it, and need not be described, and claimed in the specification.

The main point of controversy in the case has been upon the novelty of the invention, claimed by the patent. This is always the ground of difficulty for discoverers to support themselves upon. The invention must be real with them. If it has been previously in public use, or can be found described in substance, in printed publications, it is public property, and the law does not permit it to be appropriated, by means of a patent grant, to individuals. The patentees may be ignorant of such facts; but the law charges them with knowledge of them, and treats their claim to an exclusive property in their discovery as fraudulent and void.

The law rests upon sound principles of equity and honesty in that respect. The patent grant is bestowed in consideration of something new and valuable contributed by the patentees, to the public benefit. If the subject of the grant was already open to common use, they render no equivalent for the privileges they obtain, and fail to fulfill the vital condition upon which they were authorized to enjoy them.

But it is a misapprehension to suppose, there must be proof of high merit in the invention to establish a patent right. The discovery may be the merest casualty. It matters not how the thought is acquired, or how brought into action, whether by a sudden conjecture, or chance experiment, or by the labors and investigations of their whole lives, or that it proves pre-eminently serviceable and profitable to the industry and enjoyments of life, or only to a very inconsiderable amount.

To show that the machine is not new and original with the patentees, a publication has been referred to, which was printed many years previously, in the Repertory of Arts, describing, with drawings, a patent issued to Ashby, in England, for improvements in flour-dressing machines (designed to separate flour from bran as a first bolter). A model, prepared in conformity with that description, has also been brought before you, and proved, by experts, to represent the plan of Ashby's invention.

The question of fact for the jury to decide, upon the evidence, is, whether the plaintiff's machine contained substantially the principle, and the like means for carrying it out, with what is embodied, in Ashby's contrivance. If it does, and nothing more, then this

patent is void, whether that machine ever went into use or not. The difference to the eye is palpable and great, and a similarity in substance is only made out on theoretical notions, or the idea of mathematical equivalents—as for instance, that the ends of arms projecting, at equal distances, from a central shaft in Ashby's plan may, in a mathematical sense, be taken for the periphery of a wheel, or the circumference of a cylinder; but if a description of that arrangement, laid before a mechanic skilled in building machines, would not enable him, without invention, to build a cylinder nearly filling a sifting-case, it would not amount to that kind of public notice and knowledge, which could interfere with this after patent. It is submitted to your judgment, upon that proof, whether such a description as Ashby's would instruct these patentees to employ the solid cylinder in their machines, and render their construction a piracy of that plan. But admitting that a shaft, with arms having fans or brushes at their ends, to act as beaters, to create currents of air throught the sifter, in Ashby's plan, would be an equivalent for the solid cylinder used by these patentees, it is to be observed that Ashby's plan has no distributing head or table, for the offal to fall upon, at the top, to be distributed by aid of guides thereon, or by centrifugal action, equally to the inner periphery of the bolting cylinder. This is claimed to be one of the essentials of this patent, and the jury are to judge whether this arrangement is not a new and important invention, in the uses and working of the machine in question.

Other differences in this instrument, from Ashby's, are pointed out by the evidence; particularly that the ends of his bolting cylinder are left entirely open, so that the currents of air produced by the brushes or fans, in rapid motion, can not be controlled, or prevented from escaping end-ways, carrying with them the materials of flour and bran; thus counteracting the purpose, in the plaintiff's machine, which is intended, by its close bottom and top, in connection with the wire-cloth bolt, to form a fan-case, managing the air, and by it, forcing out the flour through the sides of the sifter; while in Ashby's, the brushes in actual contact seem to be the important agency for driving the flour through the sieve-sides, by the act of brushing, instead of blowing. All these particulars, making differences of action, of purpose, or construction, will be considered by the jury in determining whether the plaintiff's machine is substantially borrowed from Ashby's.

A patent granted May 16, 1846, by the U. S. patent office, to Henry Straub, for a smut machine was also put in evidence by the defendant, to prove a want of novelty in the Frost and Monroe patent. You have heard it read, and seen a model, with the drawings representing it fully and in detail. You have also heard the opinions of experts upon both sides, regarding its construction, its purpose, and mode of operation. And whether the Straub patent contains the substantial combinations, or can be so arranged as to perform the same functions (without invention) as the plaintiff's, is a question of fact for the jury, upon the evidence, to decide.

It is often a point of great perplexity to determine the identity or dissimilarity of mechanical contrivances. Inventions are rarely introduced, claiming entire machines. Old and familiar instrumentalities are brought into new combinations, or comparatively small additions are made to what is in common use; and new results or advantages are sought for under the altered structure, by aid of means, often the equivalents of those they are substituted for; so that the identity, or essential differences of patented contrivances, compared with others before in use, are particulars upon which men of experience, skill, and sound judgment, are very likely to hold differing opinions.

Strong resemblances in external appearances, similarity of products or operation, are not, separately, tests of the identity of the plan, construction, or purpose of machines; nor is a superiority in products, or in operation, in one over the other, proof of an essential difference; because the slightest change of a machine, which effects a real improvement in it, may be patentable, while great apparent variations, may be only disguises, under which an older discovery is attempted to be employed and appropriated. The jury will accordingly bear in mind, that the title of the plaintiff does not depend, either upon the degree of improvement in this manufacture, produced by their machine, or in seeming distinctions from others before known, in the form, or dimensions, or positions of its parts, or in the materials of which it is constructed.

The experts who have analyzed Ashby's, Straub's, and the plaintiff's machines, give, in their testimony, strongly conflicting opinions respecting the essential similarity and dissimilarity of the same. It is the province and duty of the jury—although, perhaps, less skilled in the science of mechanics—to weigh that evidence, and determine its reliability and force, according to their understanding and judgment of the subject.

It is not enough for the plaintiff to establish the validity of the patent; he must also prove that the defendant has included some essential part of the discovery in his machine, and is using it in violation of his right, before he can be disturbed by this action.

The defense to the charge of infringement is, that the defendant's machine is a new invention of Benton; and that those parts and combinations in it which resemble the plaintiff's, are common to theirs, to Ashby's, and Straub's machines, before adverted to, and other machines which were used before

the discovery of plaintiff's; and that the plaintiff's will not work advantageously without the knockers, which the patentees make and use with it, but do not describe in their specification. It seems furthermore considered by the defendant that he has a right to run his machine, because it is better than the plaintiff's, in the cheapness, expedition, and quality of the work done by it.

The rules of law, applicable to all these grounds of defense, are perfectly plain and indisputable. The plaintiff has no monopoly of the art of separating bran from flour by machinery. This art is open to be exercised by everybody. The defendant can not be molested in the use of his own, or Benton's invention, or of any other machine, out of the plaintiff's patent, employed for that purpose. He is, moreover, entitled to make any useful improvement he may discover, and secure it as his own property, by patent, and add it to machines in public use.

But the limitation to his right is equally plain. He can not embody in such machines the patented discoveries held by the plaintiff, nor entitle himself to use them, by adding improvements, nor new inventions of his own or of others, thereto.

Although the improvement discovered by the defendant or Benton may constitute the main value and desirableness of the plaintiff's machine, he can not claim the enjoyment of it, without the authority of the plaintiff. But the defendant is not guilty of an infringement of the plaintiff's patent, by copying any part of that machine into his own, provided the same thing, under substantially the same combinations, is found in Ashby's machine, or any other one in use previous to the patent in question; nor does he infringe, by taking separate parts of the plaintiff's combinations—when consisting of several particulars—if he takes less than the whole; but variations merely colorable in that respect, will not protect the defendant in such use.

The patentee is bound to describe, in his specification, every part of his discovery, and the whole method of constructing it, which is important to its practical and useful employment as a duster. If a knocker to act with it when in operation, is of that character, and is used and vended by him with the machine, for either of these causes, the present patent will be void, for omitting that claim or notice

So, also, it is contended by the defense that some particulars respecting the discharge of the bran and flour from the table or bottom of the machine, set forth in the machine as part of its new combination, are wholly changed or deviated from, in its working, so as to render the one used essentially different from that described; and this objection, if satisfactorily supported by proof, will defeat the plaintiff's action.

The facts, then, are to be carefully examined, to determine whether either branch of the defense is made out. It is wholly mat-

ter of evidence, of which the jury are exclusively judges. Their judgment will be formed upon a close consideration of the testimony of the witnesses on both sides, and by inspection of drawings, models, and descriptions of the various machines, in proof, with a view to the purpose for which they were respectively constructed, and their modes of operation.

You will perceive, from these suggestions, that the main points, touching the validity of the patent, rest on the question, whether the contrivance patented was borrowed from the instructions or suggestions of others to the patentees, or from machines before used for like purposes; or whether it is the invention of the patentees, and is so described that it can be built by a competent machinist, and is useful.

So, also, as to the defendant's machine—whether he has employed in its construction only what was known before the plaintiff's was patented; or whether it includes no more than a portion of the various particulars composing the combination of the plaintiff's.

The testimony of the respectable and intelligent experts who have been examined, is entitled to great consideration, and can not have failed to impart much useful information, in respect to the principles and operations of the two machines before you. The laws of mechanics become a highly essential rule of evidence, and decision, in questions turning upon inquiries into the purpose, action, and effect of mechanical contrivances. They often supply the surest test of the novelty, and utility of machines, and of their coincidence with, or diversity from, one another. It is evidence worthy the careful regard of the jury in this case, especially as it is given with the advantage of being applied to the machines themselves, in presence of the court and jury.

Very little need be said by the court on the subject of damages. The only precise rule furnished by the law is, that the patentees are entitled, when a verdict is given in their favor, to recover the actual damage they have sustained by the infringement of their patent. No legal measure being furnished, by which that amount can be ascertained, the subject is left to the sound sense and judgment of the jury. There can be rarely occasion for vindictive damages; because, almost invariably, the infringement arises out of some colorable claim of right, by the party sued. Computations have been given in evidence of the quantity of flour manufactured by the defendant on his duster, and of the profits saved to him, by the use of what is claimed to be the plaintiff's patent right. This is all a fair subject for consideration; but it is hardly to be relied upon, as fixing, with any certainty, either the quantity of work done, or its value; but it is a particular to be fairly considered by the jury, in fixing the amount of injury sustained

by the plaintiff, by any unlawful use of the invention secured to him by the patent.

The point is made in behalf of the defendant—in diminution, if not entire discharge of damages—that when he set up his machine, it was not covered by the plaintiff's patent. This suit is upon a reissue of the patent originally granted. The patentees, finding their specification was not sufficiently explicit to secure them the whole of their invention, surrendered their patent to the patent office, and had granted them a reissue, with an amended specification, embracing their entire discovery. Before that was done, the defendant's machine was put up; and as, at that time, he was not liable to an action, therefore it is insisted, he can not be made so, by a subsequent alteration of the specification and patent, without his consent.

This defense can not prevail, if it be found by the jury that the patentees were the inventors of all that is claimed under the reissued patent, and only failed reaping the benefit of their invention for the want of the perfect description of it, in their first patent, which is now supplied them, in the amended and reissued one. They and their assignees became the owners of the discovery, with a perfect title, and the defendant is answerable for any unlicensed use of the machine since that time. A person purchasing property, against the right of another, when the owner was without evidence of his title, can not hold or use it, after the evidence of his superior right is acquired by the real owner. Patent interests are not distinguishable, in this respect, from other kinds of property.

The jury will observe, from these instructions, that the controlling questions of fact, for their decision in this cause, are: Was the invention claimed in the patent a new and useful one? Were the patentees the first and original discoverers of the thing patented? Have they so described their discovery, in their specification, that a competent machinist can make the patented machine from that description? Did the patentees claim, in their specification, more than they had actually invented? or did they omit to state in it, the whole of their invention, and such parts as are necessary to its usefulness? Does the defendant's machine violate the plaintiff's rights, to his injury?

In determining this last inquiry, the jury are to ascertain whether the defendant's machine is constructed and worked upon substantially the same principles, and to the same results, with that of the plaintiff; or whether its construction, combination, action, or purpose be substantially different; whether the difference in the two machines be only formal, or consist in improvements in the defendant's upon the plaintiff's; or are they the original discovery of Benton or the defendant. and render his machine distinct from the plaintiff's.

The instructions before given will have sufficiently pointed out to the jury the application of the law to the various facts submitted to their inquiry, according to their findings upon these facts.

The jury found a verdict for the plaintiff, with $270.06 damages.

[NOTE. Thereafter defendant moved for a new trial, which was granted. See next preceding case, No. 2,439. Patent No. 6,168 was granted to Frost & Monroe, February 27, 1849;. reissued March 13, 1855 (No. 302), and February 25, 1862 (No. 1,280). For other cases involving this patent, see note to next preceding case, No. 2,439.

[As to what constitutes novelty within the laws relating to patents, see Forbush v. Cook, Case No. 4,931; Wayne v. Holmes, Id. 17,303; Clark Patent Steam & Fire Regulator Co. v. Copeland, Id. 2,866; Adams v. Edwards, Id. 53; Milligan & Higgins Glue Co. v. Upton, 97 U. S. 3, affirming Case No. 9,607; Matthews v. Skates, Id. 9,291; Wintermute v. Reddington, Id. 17,896; Hayes v. Sulsor, Id. 6,271; Wood v. Packer, 17 Fed. 650; Judson v. Moore, Case No. 7,569; Bedford v. Hunt, Id. 1,217; Earle v. Sawyer, Id. 4,247. It is not sufficient that a new result is produced. Leroy v. Tatham, 14 How. (55 U. S.) 156, 178. A known result produced by new means is insufficient. Smith v. Nichols, 21 Wall. (88 U. S.) 112, affirming Case No. 13,084.]