CHICAGO WOODEN WARE CO. et al. v. MILLER LADDER CO.

MILLER LADDER CO. v. CHICAGO WOODEN WARE CO. et al.

(Circuit Court of Appeals, Seventh Circuit. May 12, 1904.)

Nos. 1,070, 1,074.

1. APPEAL—FINALITY OF DECREE IN INFRINGEMENT SUIT—CROSS-APPEAL BY COMPLAINANT.

A decree in a suit for infringement, entered after full hearing on pleadings and proofs, which adjudges title to the patent, the validity of certain claims, and the invalidity of others, the infringement of the valid claims, and awards a perpetual injunction and damages, to be determined on an accounting, is not merely an interlocutory decree awarding an injunction, but is so far a final decree that, where an appeal has been taken by defendant, who has brought up the record, complainant may prosecute a cross-appeal for the review of that part which adjudges certain of the claims invalid.

2. PATENTS—VALIDITY OF CLAIM.

The fact that a patentee described and claimed "a trestle consisting of two pairs of legs" pivoted as shown, whereas by the accepted definition a top piece is essential to constitute a trestle, does not render the claim invalid where the meaning is plain, and the legs as shown are adapted to be used with any kind of a top piece to complete the trestle, as intended.

3. SAME—INFRINGEMENT—FOLDING TRESTLE.

The Miller patents, No. 343,829, for a folding trestle, claims 1 and 2, and No. 401,848, for an improvement thereon, held valid and infringed.

Appeal and Cross-Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The Miller Ladder Company brought this suit on account of an alleged infringement of letters patent No. 343,829, June 15, 1886, and No. 401,848, April 23, 1889, to Miller, complainant's assignor, for improvements in folding trestles.

The description and claims of the first Miller patent are as follows: "The object of the present invention is to provide a simple and effective trestle for scaffolding for the use of paper hangers to support their boards on, or as a table-support, and other uses to which a trestle may be adapted; and it consists in the details of construction, substantially as shown in the drawings, and hereinafter described and claimed.

"In the accompanying drawings, A B and C D represent two pairs of legs, of any suitable length and thickness, and pivoted together at (their mid-length by pivot) a. The legs or standards A C are connected together near their lower ends by braces, b, c, which are pivoted to the legs or standards, and also pivoted together, as shown at d, the legs or standards B D being in like manner connected together.

"Any desirable and well-known form of braces may be used as found most preferable, which change I reserve the right to make without departing from the principle of my invention, and the same right I reserve as to the form and construction of the plates, e, which connect together the legs or standards, A C and B D, at their upper ends, the plates being connected or pivotally attached to each other at f.

"The pivots, a, and pivots, f, are at right angles to each other. Thus the legs or standards of each pair can be folded down upon each other, while the legs or standards A C and B D are brought together, thereby folding the trestle in a compact form, as shown in Fig. 4.

"In setting up the trestle for use the legs or standards are brought into position, as shown in Fig. 1, the braces and a support, E, hereinafter described, keeping them extended.

"When the legs or standards A C and B D are partially extended with relation to each other, a space is left between the upper ends, in which is inserted the ends of the support E. This support has mortises, g, in its sides, as shown, which fit the sides of the legs or standards, and by spreading each pair of legs apart at their lower ends the support will be held firmly between them.

"Having now fully described my invention, what I claim as new, and desire to secure by letters patent, is—

"1. A trestle consisting of two pairs of legs or standards, pivoted together at or near their center and near their upper ends, and connected together near their lower ends by pivoted braces, whereby they are adapted to fold together, substantially as and for the purpose set forth.

"2. The combination, with a trestle consisting of two pairs of legs or standards pivoted together, as shown, of a support having mortises on its sides and near its ends, and adapted to be held between the upper ends of said legs or standards, substantially as and for the purpose specified."

The description and claims of the second Miller patent are as follows: "This invention relates to certain improvements in the type of folding trestles that forms the subject-matter of letters patent No. 343,829, issued to me June 15, 1886, for improvement in trestles; and the present improvements have for their object to provide a simple, cheap, and durable trestle construction embodying the features of cheapness and durability in construction, ease in folding and unfolding the trestle, and permanent pivotal connection of the trestle parts together. I attain such object by the construction and arrangement of parts illustrated in the accompanying drawings, in which—

"Figure 1 is a perspective view illustrating the trestle in its unfolded condition ready for use; Fig. 2, a similar view of the trestle in its folded condition; Fig. 3, a detail side view of the upper end of the trestle in the folded condition; Fig. 4, a detail section illustrating the connection of the legs or standards to the free end of the horizontal top bar of the trestle; and Fig. 5 a similar view of a modified form of the same.

"Similar letters of reference indicate like parts in the several views.

"As represented in the drawings, my improved trestle consists of four legs or standards, A A', B B', pivoted together in pairs at or near their mid-length by means of screws, a, b, or other equivalent means.

"C is the horizontal top bar of the trestle, pivoted at one end between the upper ends of the legs A B by a suitable pivot-bolt, c, so as to have pivotal movement between the same, its free end being engaged, when the trestle is

unfolded, by the upper ends of the legs A' B', which engage in beveled recesses, c, in the sides of such bar, as shown in Fig. 4, to effect a firm and substantial connection; such legs A' B' being pivoted together by pivot plates or hinges, D, at a point immediately below the bar C, as clearly indicated in Figs. 1, 3, and 4.

"As shown in the drawings, the corresponding legs A B of each pair of legs, between which the horizontal bar C is pivotally attached, are arranged adjacent to each other and between the legs A' B', that engage the free end of the horizontal bar C. With this construction the four legs can be made of equal lengths to avoid all after fitting and cutting, which was a serious defect in the construction shown in my former patent, in which the legs were required to have different lengths in order to attain a perfect rest or footing.

"As a modification of the mode of attachment of the free ends of the horizontal top bar, C, to the upper ends of the legs A' B', as illustrated in Figs. 1 and 4, an open-bottomed recess, $c^2$, may be formed in the bar C, preferably by metal side plates, C', to receive and confine the upper ends of the legs A' B', as shown in Fig. 5.

"E is a strut or brace pivoted to one of the legs, and adapted to engage against the inner side of the opposite leg to hold the trestle parts in their extended condition. This strut may be located at any other suitable position from that shown without departing from the spirit of my invention, and in some cases omitted entirely or replaced by the hinged brace shown in my former patent, No. 343,829.

"The top bar, C, is shown in the drawings of a length greater than the space between the upper ends of the legs or standards. The purpose of such construction is to form a convenient rest for a paper-hanger's straight-edge, widening-board, etc., when the trestles are to be used for such work; otherwise the bar need not have such extra length, and the parts can be increased or diminished in size and proportions as the particular uses to which the trestle is to be applied or the judgment of the maker may suggest without departing from the spirit of my invention.

"Having thus fully described my invention, what I claim as new, and desire to secure by letters patent, is—

"1. A trestle consisting in the combination of a horizontal top bar, C, and four legs or standards, A A', B B', pivoted together in pairs at or near their mid-length by pivots a, b, the legs A' B' being pivoted together at or near their upper ends by pivot D, the axis of which is at right angles to the axis of the pivots a, b, and the corresponding legs A B being arranged adjacent to each other and between the corresponding legs A' B', the parts being adapted to fold together into a compact form, in the manner and for the purpose set forth.

"2. A trestle consisting of four legs or standards A A', B B', pivoted together in pairs at or near their mid-length by pivots a, b, the legs A' B' being pivoted together at or near their upper ends by pivot D, the axis of which is at right angles to the axis of the pivots a, b, in combination with the horizontal top bar, C, pivotally secured between the upper ends of the legs or standards, whereby the trestle parts are permanently connected together and adapted to fold into a compact form, substantially as herein- described, and for the purpose set forth.

"3. The combination of the legs or standards A A', B B', pivoted together in pairs and connected together by hinge D, with the correspondings legs A B arranged adjacent to each other and between the corresponding legs A' B', top bar, C, having a recess, essentially as described, for receiving the upper ends of the legs A' B', and pivot-bolt, c, substantially as described, and for the purpose set forth.

"4. The combination of the legs or standards A A', B B', pivoted together in pairs and connected together by hinge D, with the corresponding legs A B arranged adjacent to each other and between the corresponding legs A' B', top bar, C, having a recess, essentially as described, for receiving the upper ends of the legs A' B', pivot-bolt c, connecting the end of bar C with the tops of the legs A B, and strut or brace E, substantially as described, and for the purpose set forth."

The court, after issues joined, and on full proof, held the first claim of the first patent to be void, the second claim of the first patent and the four claims of the second patent to be valid and infringed, awarded a perpetual injunction against infringement of the second patent (the first having expired shortly before the decree was entered), and decreed an accounting with respect to infringement of the five claims held valid. Defendants appeal and attack the decree in every respect in which it is against them, and complainant presents a cross-appeal challenging the correctness of the decree in so far as it adjudges the invalidity of the first claim of the first patent. Defendants move to dismiss the cross-appeal.

The record exhibits the following patents as illustrative of the prior art: 19,107, January 12, 1858, to Stone; 27,277, February 28, 1860, to Dodge; 72,562, December 24, 1867, to Sutter; 100,430, March 1, 1870, to Mallory; 128,332, June 25, 1872, to Smith; 129,978, July 30, 1872, to Noggle; 166,874, August 17, 1875, to Hood; 232,100, September 7, 1880, to Zwiebel; 262,206, August 8, 1882, to Carr; 295,269, March 18, 1884, to Miller; 304,357, September 2, 1884, to Powell; 318,896, May 26, 1886, to Hanssen.

Defendants' device is built in accordance with letters patent No. 702,431, June 17, 1902, to Howard.

Thomas A. Banning and Frederick Benjamin, for Chicago Wooden Ware Co.

James B. Raymond and Otto Barnett, for Miller Ladder Co.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. Motion to dismiss the cross-appeal. A' year before the decree now appealed from was entered, the court enjoined defendants pendente lite from continuing to infringe the second claim of the first patent and the four claims of the second patent. From that temporary injunction, indisputably interlocutory, defendants might have prosecuted an appeal under section 7 of the Court of Appeals act; and on such an appeal the sole question would have been whether the court had improvidently entered the injunctional order. Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540. But since the act of June 6, 1900, c. 803, 31 Stat. 660 [U. S. Comp. St. 1901, p. 550], repealed the amendment of 1895 (2 Supp. Rev. St. p. 376), complainant could not have taken an appeal or a cross-appeal from the court's refusal to enter a pendente lite injunction with respect to claim 1 of the first patent. Columbia Wire Co. v. Boyce, 104 Fed. 172, 44 C. C. A. 588. The decree now under consideration was entered after both parties had taken and submitted full proofs on the issues joined (and there is no suggestion from either side that anything further in the way of pleading or proof could be added). It adjudged that complainant's title was good, that claim 1 of the first patent was void, that claim 2 of the first patent and the four claims of the second patent were valid, and that defendants' device infringed all the valid claims; and it decreed that defendants, as to the future, should perpetually refrain from infringing the second patent, and as to the past should pay complainant all damages suffered by reason of the infringement of the claims held valid in both patents, the amount of such damages to be determined thereafter on a master's report. A decree of this character in a patent suit is customarily called interlocutory. If it were in truth final, as was the decree in the land suit of Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404, complainant's right to a cross-appeal could not be

successfully questioned. If it were in truth interlocutory in the sense and to the extent that the decree awarding the temporary injunction was interlocutory, complainant's lack of right to a cross-appeal would be indisputable. But whether the calling of a decree that adjudges title, validity and invalidity of claims, infringement, and liability therefor, and awards a perpetual injunction, a temporary decree that is to stand only until a final decree on the merits can be rendered, is or is not a misnomer, a virtual contradiction involving both inaccuracy of terminology and misapprehension of substance (as was debated at large by Judges Showalter and Woods pro and con in Standard Elevator Co. v. Crane Elevator Co., 76 Fed. 767, 22 C. C. A. 549), is a question that became moot, we think, by the Supreme Court's decision in Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810, wherein it was held that on an appeal from a decree like this the appellate tribunal, with all the pleadings and all the evidence before it for an independent hearing, had "authority to consider and decide the case upon its merits," to the end that the parties might be saved the time, trouble, and expense that would be involved in carrying on further litigation in the Circuit Court in a way that was contrary to the views of the Court of Appeals on the ultimate merits. Here defendants present a complete record, containing all the pleadings and proofs. They do not attack merely the injunction respecting the second patent, and that on the ground that it was temporary and improvidently issued; but they contend that, as to the five claims of the two patents held valid, the ultimate merits of the questions of validity and infringement are in their favor. If we were not authorized now to consider and decide the merits with respect to claim 1 of the first patent, which was included in the pleadings and proofs and held invalid, the result would be that the Circuit Court would proceed with the accounting on a basis that does not accord with our views of the ultimate merits, and a new accounting would have to be taken after a subsequent appeal to this court. Motion overruled.

The first Miller patent. Miller's idea was this: It would be a good thing to have a trestle whose four legs are inseparably pivoted and coupled in such a manner that they may be folded into a compact form, convenient for a workman to carry from place to place. The prior art discloses quite a variety of trestles and tables. Some have the legs separately attached to the top; some have two of the legs attached to the top and coupled to each other in a way to permit the pair to be folded under the top; some have detachable legs coupled in independent pairs. None has the four legs detachable from the top and pivotally coupled in such a way that the closing together of one pair closes the other and brings the four into one compact, connected bundle. Nor was Miller's result accomplished by substituting one man's thought as a part in another man's scheme. The device was wholly novel, performing a function never before performed, achieving at once an extensive demand and a successful use; and the invention, small in character though it seem, is therefore entitled to a primary rank. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 561, 18 Sup. Ct. 707, 42 L. Ed. 1136.

The argument against the validity of claim 1 is this, as we understand it: A trestle, according to the lexicographers, is a support "consisting of three or four legs secured to a top piece." The claim calls for "a trestle consisting of four legs coupled and pivoted as shown." This is not a trestle; the legs cannot be used as a trestle without a top piece; the claim, by defining a trestle as consisting of four legs, expressly excludes a top piece, and is therefore void, because it calls for an inoperative device. But if, by any possibility, a top piece can be inferred, it is only the one shown in the drawing and description and covered by claim 2; and claim 1 is therefore void as a duplication.

It will be observed that claim 2 calls for the combination of "a trestle consisting of two pairs of legs pivoted together as shown," and "a support having mortises on its sides and near its ends," being the support shown in the drawing and description. In both claims it is evident that Miller differed with Webster and others as to the definition of a trestle. But for all that he should not be deprived of protection in his invention, any more than for mistakes in orthography provided he did not misspell beyond recognition of the sense. In these claims we think the meaning is as recognizable as if they had read: (1) In a trestle, four legs pivoted and coupled as shown; (2) a trestle consisting of the combination of the four legs of claim 1 and the particular top piece as shown.

Thus construed, and in the light of the prior art as stated, claim 2 is unquestionably good. Claim 1 is also good, unless it would be impossible for a skilled mechanic to use the four legs in connection with any known top piece except Miller's. The legs will not stand alone and support any considerable weight. The crossed legs will spread unless (to revert to Webster) they be "secured to a top piece." A skilled mechanic could certainly secure the legs to any kind of a top piece by nails or screws, and, if the top piece were not then detachable with sufficient readiness to suit him, he might use holes in or stops upon the top piece. In this aspect of it, the validity of claim 1 is fully sustained, we believe, by the decisions in Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Deering v. Winona Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153; Hancock Inspirator Co. v. Jenks (C. C.) 21 Fed. 911; Rapid Service Store Ry. Co. v. Taylor (C. C.) 43 Fed. 251; Western Telephone Mfg. Co. v. American Electric Telephone Co. (C. C. A.) 131 Fed. 75.

The second Miller patent is for improvements upon the first. The new idea was to adopt a top piece of such a form, with relation to the legs of the first patent, that it could be permanently and pivotally secured to the legs in a way that would make the whole trestle a unit foldable into a compact, connected bundle. In carrying out the idea it was found necessary to modify the coupling of the legs of the first patent. Just as the first patent showed a new and distinct step beyond anything in the prior art, so the second, we think, evinced progress beyond the first. And in view of the utility and success of the improvement we are unwilling to deny to it the quality of invention.

Infringement. The similarities are so obtrusive that it is difficult to see and appreciate the alleged differences. The purpose is the same.

The result is the same.  To obtain the result (so far as Miller went), defendants employ Miller's means identically in the main, substantially in minors.  The differences that are appreciable relate to improvements upon Miller's device, which are claimed in Howard's patent.  Improvement, of course, is no justification of a trespass.

On the appeal the decree is affirmed; on the cross-appeal the decree is reversed, with instructions to proceed consentaneously hereto