BEMIS et al. v. CHARLES A. STEVENS & BROS.

(Circuit Court, N. D. Illinois, E. D. March 24, 1910.)

No. 28,385.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PNEUMATIC DESPATCH TUBE SYSTEM.

> The Bemis patent, No. 696,305, claims 8, 33, and 40, for a station terminal in a pneumatic despatch tube system, are not limited to the station terminal described as a whole in the specification, but each covers and protects the parts of such terminal therein described in combination. As so construed, such claims were not anticipated and disclose patentable invention; also *held* infringed.

In Equity. Suit by Thomas Bemis and the Taisey Pneumatic Service Company against Charles A. Stevens & Bros., Charles A. Stevens, Thomas A. Stevens, and John H. Stevens. On final hearing. Decree for complainants.

V. H. Lockwood, for complainants.

Griffin & Bernhard, Harry P. Simonton, and Long & Pierce, for defendants.

KOHLSAAT, Circuit Judge. Complainants brought this suit to restrain infringement of claims 8, 33, and 40 of patent No. 696,305, granted to Thomas Bemis March 25, 1902. It is the contention of defendants that the claims in suit are for the station terminal in the pneumatic tube system claimed by the patentee, and shown in the specification, and not for that part thereof used by defendants.

The claims read as follows, viz.:

> "8. In a pneumatic despatch tube system, a station terminal having a discharge branch and an air branch which are substantially parallel, guides for preventing the passage of a carrier into the air branch, and a valve arranged to close the discharge branch opposite the mouth of the air branch with its lower and immediately below the same."

> "33. In a pneumatic despatch tube system, a station terminal having a discharge branch and an air branch connected thereto, guides for preventing the passage of a carrier into the air branch, and a valve arranged to close the discharge branch opposite the mouth of the air branch and pivotally supported at its rear end upon an axis located upon the side of the discharge branch opposite from the air branch."

> "40. In a pneumatic despatch system, a station terminal having a discharge branch, and an air branch leading from the side of said branch, and a valve arranged to close the discharge branch, a portion of said valve lying in line with the mouth of the air branch."

It will be observed that the three claims are, in substance, the same, each emphasizing a separate element of the terminal. In the specification, the station terminal is described as follows, viz.:

> "The station terminal consists of a hollow head 59, within which is pivoted a wheel 60, similar to the wheel 48, the said wheel being preferably mounted at the center of the curve on the outer portion of the head 59, and being of such diameter as to form a channel 61, within which the carrier may travel. Head 59 is provided with a pair of tubular branches, 62 and 63, the branch 62 being adapted to be secured to the end of one of the tubes 22. * * *

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Head 59 is also provided, immediately adjacent its branch 63, with a branch 66, which is led from the channel 61, parallel with branch 63, and forms substantially a continuation of channel 61. The inner wall of branch 66 is slotted at 67 to provide passage for the air from channel 61 into the branch 63. Pivoted at 68 in the branch 66 is a door 69. Door 69 may be held normally closed by a spring; but such spring is not necessary, as the door will be normally held closed by suction. The branch 66 is of a length, below door 69, greater than the length of the carrier, and the lower end of the branch is normally closed by a spring door 70 of the usual type."

In lines 70 to 75, col. 2, p. 1, the station terminal is referred to as station terminal 25, having reference to the drawings. Defendants' device covers only what might be said to correspond to branch 63 and (except that part below valve 69) branch 66 of the head 59 of the patent in suit. A fair interpretation of the language of the specification leads to the conclusion that the station terminal claimed includes the head 59, the wheel 60, and the tubular branches 62 and 63 of Figure 5. That such was the patentee's intention further appears from the fact that Figure 4 is described as an axial section of the discharge end of the cashier's terminal. If the claims in suit are to be limited by the language of the specification, the defendants do not infringe, for the reason that they do not use the above described station terminal. The claims in suit undertake to describe certain elements of a station terminal, the latter being a part of a pneumatic despatch tube system. In order to show infringement, it is essential that the complainants' station terminal be construed to mean only that part of the station terminal of the specification which includes branch 67, and that part of branch 66 which includes and extends above the valve 69. So far, therefore, as the alleged infringement is concerned, the question is: Shall complainants be held to the form of station terminal set out in the specification, or may they, for the purposes of this suit, apply the term to a fraction of that station terminal? It is a well-settled rule that a specification may be invoked to explain and to narrow a claim. In the present case, to follow the specification would result in a narrowing of the claims so far as the use of the term "station terminal" is concerned. But complainants insist that, inasmuch as some of the other claims cover parts of the station terminal of the specification, therefore the claims in suit should be limited to the elements described specifically in each claim. For instance, claim 4 calls for a station terminal consisting of a curved tubular head and a revoluble wheel mounted therein. Claims 10 and 11 also speak of the station terminal as consisting of a channel, a depending discharge end, and an air tube, etc. Thus it will appear that patentee uses the phrase "station terminal" very loosely, and with no intention of limiting himself to the complete device of drawings 4 and 5. That being so, it is necessary, in order to give effect to the patent considered as a whole, to treat the station terminal of complainants as limited to branches 66 and 67, and their several details of arrangement. Complainants further insist that so much of branch 66 as lies below the valve 69 may be dispensed with as in no degree essential to the device of the claims in suit. Coupling this lower branch 66 with defendants' corresponding feature, it is seen that it is a receptacle into which the carrier is driven on its way out, while defendants' carrier is driven into an open basket

or receptacle at once. As with the so-called head, so with regard to the lower extension of branch 66, with its second valve, certain claims of the patent specifically provide for it, as, for instance, claims 9, 10, 11, 12, 13, 34, and 41. Here, again, complainants have elected to call branch 63 and (except that part thereof below valve 69) branch 66 a station terminal. Thus trimmed, complainants' device anticipates that of defendants, lacking only the basket into which the carrier descends. Bearing in mind the declaration found in Wooden Ware Co. et al. v. Miller Ladder Co., 133 Fed. 541, 66 C. C. A. 517, that a patentee has the right to term the legs of a trestle a trestle, notwithstanding Webster's or his own different definition, it does not seem to be an overstraining of the language of the patent to hold that the phrasing of the claims in suit may be properly construed to evidence an intention on the part of the patentee to secure to himself the benefit of any part of his particular device for taking care of the carrier at and near the point of discharge thereof. If, therefore, the said immediate discharge device constitutes a valid invention, the prior art considered, the court is bound to find for the complainants, since defendants' external receiving basket or receptacle cannot be held to be an essential element of their device, being entirely independent of pneumatic delivery equipment. Bemis was not a pioneer in the pneumatic despatch tube art, nor with that part of it appertaining to the station terminal devices. Defendants introduce in evidence among others six patents of the prior art, viz., patent No. 417,828, granted December 24, 1889, to E. D. Leaycraft, patent No. 451,619, granted May 5, 1891, to E. D. Leaycraft, patent No. 460,160, granted September 29, 1891, to J. Reilly, patent No. 564,965, granted August 4, 1896, to L. G. Bostedo, patent No. 594,090, granted November 23, 1897, to J. W. & A. Mathis, and patent No. 604,405, granted May 24, 1898, to J. W. & A. Mathis, bearing upon the subject-matter of the claims in suit.

Leaycraft patent, No. 417,828, discloses two devices, one consisting of a curved discharge tube, having a section of the outer curved wall of the tube arranged to operate as a discharge valve, whereby the carrier is impacted upon the valve tangentially or centrifugally, being directed by a curved guide, which it would have a tendency to leave at or near the valve, thus striking the valve at varying distances from the pivotal point and increasing the force necessary for its operation, the other consisting of a straight discharge tube having its valve also cut from the wall of the tube, and depending perpendicularly from its pivot as a section of such wall. The guide extends across the tube obliquely in such a manner as to direct the carrier obliquely against the valve with what would seem to be a tendency to wedge, or, at least, lose some of its impetus, whereby the valve would operate slowly, and perhaps fail to discharge the carrier. These valves are necessarily larger and heavier than they would need to be, were they in the direct line of travel of the carrier. Moreover, they present their concave sides to the carrier—a circumstance which could hardly fail to affect the promptness of the response of the valves. So far as here required, Leaycraft's later patent, No. 451,619, presents no features not found in the foregoing patent, and will therefore not be further considered.

Reilly patent, No. 460,160, calls for a station terminal having the air and discharge branches, the latter being provided in its lower end with a valve which is operated by a pivotably secured lever, which lies at an angle across the path of the carrier. The carrier strikes the lever and throws the valve open. The impact of the carrier upon the valve is made through a perpendicular tube, and is applied at right angles to the valve. Should the lever not be sensitive, or the carrier delivered with force, there would seem to be danger of a wedging effect upon the carrier between the lever and the wall of the tube, whereby discharge might be uncertain. The intervention of the lever element above serves to distinguish this device from Bemis'.

The Bostedo patent, No. 564,965, is for a receiving box in connection with a pneumatic despatch tube "adapted to have the carrier discharged upwardly therein." The box seems to cover a head similar to that of complainants' device, without the wheel. The carrier passes into this head, having upper and lower curved guides which deliver it into a perpendicular delivery tube, through which it descends by gravity upon two doors or shutters hinged outwardly, and which respond to the impact by swinging downwardly from the center of the tube toward its walls. They are directly in the line of the carrier. The valve does not close the discharge branch opposite the mouth of the air branch. Otherwise the device is much the same in principle as that in suit.

So far as pertinent here, the Mathis patents, Nos. 594,090 and 604,405, are for the same device—the latter differing from the former, in that it provides a closed delivery branch 6, having a self-closing valve or gate in the bottom thereof. The avowed function of this housing chamber is stated to be that in consequence thereof the outside atmosphere cannot pass through the discharge opening into the despatch tube, etc. Complainants' expert Stoddard gives it as his opinion that, with the receiving chamber 6 omitted, this patent 604,405 is substantially the same as the Leaycraft straight-branch device. This statement is correct so far as appears of record. The discharge branch or tube is pivoted at the top and normally fitting into and filling the opening left by cutting it from the tube wall. The valve is practically like that of the Leaycraft patents—long and heavy. It is struck at an oblique angle by the carrier, and, as stated above, with regard to the Leaycraft device, and for the same reasons, does not respond fully and effectually to the impact of the carrier.

Other patents are cited by defendants, but the above are all that are deemed material in this inquiry. It will be seen that there is a substantial, though slight, difference between the construction of the station terminal in suit and those cited. It consists in the arrangement of the guides and valves, so that the carrier will strike the valve at the most effective point in the pneumatic device, and consequently result in a clean delivery of the carrier. The idea appears in the prior art, but it was never fully accomplished.

Bemis' advance was simply that of adjustment. His valve was smaller and placed more directly in the line of travel of the carrier than that of either Leaycraft or Mathis. It differed from Reilly in that it projected the carrier directly upon the discharge valve, as above stated, but is otherwise very close to Bemis' device. Looking, however, at the

result attained, together with the difference above named, I am inclined to think there is some degree of invention in complainants' device. I give no weight to complainants' experiments made in the absence of defendants. Such attempts at making evidence are not to be encouraged.

Let a decree go for an injunction and for an accounting.