LOUDEN MACHINERY CO. v. STRICKLER.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912.)

No. 1,801.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HAY-CARRIER.

The Louden patent, No. 555,605, for a hay-carrier, in its "pulley-supporting mechanism," which is constructed in two parts, while the nearest prior device required three parts, was not anticipated and discloses invention. Claims 1, 2, 3, and 4 construed, and *held* infringed.

2. PATENTS (§ 177*)—INFRINGEMENT—CONSTRUCTION OF CLAIMS.

Elements in combination claims of a patent should be read with reference both to the structure and the function given in the description of the invention, and form is material only so far as it is essential to the operation, or indispensable, by reason of the state of the art, to the novelty of the claim.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 253, 254; Dec. Dig. § 177.*]

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

Suit in equity by the Louden Machinery Company against Frank B. Strickler. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 186 Fed. 522.

Appellant's bill for infringement of patent No. 555,605, March 3, 1896, to Louden, for improvements in hay-carriers, was dismissed for want of equity.

Figures 1, 2, and 4 of the patent are herewith reproduced:

Structure and operation are described in the specification as follows:

"*A* represents the carrier, and *B* the track which it traverses. The style of the carrier is that commonly known as a 'swivel,' which is provided with an upper and a lower frame swiveled together. The upper frame is provided with arms or brackets *D*, which are fitted with wheels *W* to run upon the edges of the track-rail in the usual manner. The upper frame may be all cast in one piece, in which case the arms on opposite sides of the track will be joined together by the parts *C*, or it may be made in two separate pieces and be joined together by the bolts or rivets *b*. In the central part of the upper frame is a vertical opening *E*, in which is fitted a vertically-sliding dog *F* (most plainly shown in Fig. 4 in perspective), consisting of two upwardly-extending arms *a*, secured to an annular lip or base *G*, and each arm carrying a laterally-projecting lug *d*. A stop *S* is secured to the track-rail *B* and is provided with inclines or cam-faces *f* and laterally-projecting lugs *g*. The lugs *d* of the dog *F* are adapted to slide up the inclines *f* and to catch against the lugs *g* of the stop *S*, while the annular lip or base *G* will be free to engage a pulley catch or hook at any point on its circumference, as will be hereinafter explained.

"The lower frame of the carrier is made in two parts *I* (one of the parts only being shown in the drawings), which are joined together by the bolts or rivets *J*, and are provided on the inner sides of their upper edges with semicircular lips or flanges *K*. The upper frame of the carrier is provided on its lower outside edge with an annular lip or flange *H*, and the lips or flanges *K* are adapted to catch over and turn upon the lip or flange *H*, thus permitting the position of the lower frame to be reversed with regard to the upper frame and to the track.

"In the lower frame *I* a sheave *L* is journaled, and over this sheave a hoisting-rope *M* is passed. A bent arm on hook *N* is pivoted in the opposite end of the lower frame *I*, and to the outer end, *n*, of this arm the rope *M* is connected. The upper end *N²* of this arm or hook *N* is made concentric with its pivot, and is adapted to support the dog *F* in elevated position, while its upper end is presented to the annular base of the dog. Upon the loop of the rope *M*, between the sheave *L* and the arm *N*, pulleys *O* are mounted, and are fitted with hooks *h* or other equivalent means to hold the load to be elevated. A catch *P* may also be pivoted in the end of the lower frame adjacent to the sheave *L*, the office of which will be hereinafter explained.

"The operation is as follows: The carrier being in the position shown in Fig. 1, with the concentric end of the arm *N* bearing against one side of the under edge of the annular base *G*, the dog *F* will be held in elevated position, and its lugs *d* will be held in engagement with the lugs *g* of the track-stop *S*,

and the carrier will be held stationary upon the track. The catch $P$ being used, its upper end $P^2$ will stand under the opposite edge of the annular base $G$, and will also support the dog $F$ in its elevated position. Power being applied to the free end of the rope $M$, the arm $N$ will be drawn into the frames of the pulley-blocks $O$, as shown in Fig. 2. and at the same time the concentric end of the arm $N$ will be drawn from under the annular base $G$. The pulley block $O$, being drawn against the arm $P''$ of the catch $P$, will push its upper end $P^2$ from under the base of the dog $F$ and allow it to drop between the arm $N$ and the catch $P$ and release the carrier from the stop $S$, the annular base of the dog at the same time holding the arm $N$ and catch $P$ in the position shown in Fig. 2, thus supporting the pulley-block $O$ in position. The carrier being drawn back to the stop, the dog will be lifted by the cam $f$, and the arm $N$ and catch $P$ will again assume the position in Fig. 1.

"The principal office of the catch $P$ is to support the lower end of the arm $N$ and prevent it from giving way under the strain of a heavy load. It is so arranged that after the arm $N$ has been drawn up by the hoisting-rope its lower end. $P^3$, will catch under the projecting end. $n$, of the arm $N$ and hold it in position. It also aids in holding the dog $F$ in elevated position and helps to equalize the strain upon the dog while the carrier is supporting the load.
* * *

"In Fig. 2 the concentric part of the upper end of the arm $N$ is omitted, in which case the catch $P$ is depended upon entirely to hold the dog $F$ in elevated position.

"It is evident that the swiveling of the lower frame $I$ will not in the least interfere with the operation of the dog $F$. Whatever may be the relative positions of the upper and lower frames in respect to each other the annular lip $G$ will always be in the proper position for the engagement of the arm $N$ and catch $P$. In case the catch $P$ should be discarded and the strain all placed upon one side of the dog the opening $E$ in the upper frame of the carrier is made circular to fit and support the base $G$, and the dog may be further held in position by means of the. flanges $l$ at each side of the arm $a$, as shown in Fig. 3.

"It is evident that the dog $F$ with its annular lip $G$ may be used with any kind of pulley-supporting hook or catch adapted to co-operate with said annular lip, and therefore in the use of said dog I do not wish to be limited to the exact form of pulley-support herein set forth. Either one or two pulley-blocks may be used with my invention as required by the nature of the load to be elevated."

Four claims are in suit:

"1. The combination of an upper frame adapted to run on a track, a lower frame swiveled to the upper frame and carrying pulley-supporting mechanism, and a dog having an annular lip adapted to engage said mechanism at any point on its circumference.

"2. The combination of an upper frame adapted to run on a track, a lower frame swiveled thereto and carrying pulley-supporting mechanism, a dog having upwardly-extending arms and an annular lip adapted to engage said pulley-supporting mechanism at any point on its circumference, and a stop to engage the upwardly-extending arms, substantially as set forth.

"3. The combination of an upper and a lower frame swiveled together, a dog mounted in the upper frame and having an annular lip, and a hook or arm pivoted in the lower frame and adapted to engage the lip of the dog at all points on its circumference, substantially as and for the purpose set forth.

"4. The combination of an upper and a lower frame swiveled together, a sheave journaled in said lower frame. a rope passed over said sheave so as to form a loop, a pulley-block hung in said loop, a pivoted hook or arm to engage and support said pulley-block, and a dog having an annular lip adapted to hold the hook or arm in engagement with the pulley-block at all points on its circumference, substantially as set forth."

Prior art patents, to overcome or limit the Louden claims, were introduced in evidence:

No. 167.763. H. W. Hoffman. September 14, 1875; No. 273,455, G. W. Brower, March 6, 1883; No. 274.317, E. L. Hall, March 20, 1883; No. 279,889, F. B. Strickler, June 19, 1883; No. 288,839, R. Miller, November 20, 1883;

No. 300,687, J. M. Boyd, June 17, 1884; No. 308,848, J. Ney, December 2, 1884; No. 515,296, W. Louden, February 20, 1894; No. 555,605, W. Louden, March 3, 1896; No. 620,467, W. Louden, February 28, 1899.

On the record it is clear, and at the argument counsel virtually agreed, that infringement, as alleged, cannot be found unless the following contentions of appellee are unwarranted:

(1) That the "pulley-supporting mechanism" of claims 1 and 2 is anticipated, and these claims therefore are invalid unless the dog with a cut-out base gives novelty to the respective combinations.

(2) That the element, "a dog having an annular lip," is limited to a dog (figure 4 of the drawings) having a cut-out base as shown, and therefore no claim is infringed by a device in which the dog, like appellee's, has a solid base.

(3) That claims 3 and 4 are limited to a single hook for supporting the pulley-block, and therefore are not infringed by a structure, like appellee's, which has two hooks or arms to support the pulley-block.

Figure 4 of the Miller patent, No. 288,839, is as follows:

Cuts showing a comparison that appellee makes between Louden and Miller are subjoined:

LOUDEN ARRANGEMENT.    MILLER ARRANGEMENT.

W. Clyde Jones, for appellant.

Charles K. Offield and Charles J. Schmidt, for appellee.

Before BAKER and SEAMAN, Circuit Judges, and CARPENTER, District Judge.

BAKER, Circuit Judge (after stating the facts as above). [1] Hay-slings were old, and the art was well developed, in fact crowded, before Louden applied for the patent in suit. Without detailing the prior art, it is enough for present purposes to say that the public or other men than Louden were entitled to combine the following elements, broadly considered: A track; a stop on the track to engage the upwardly-extending arms of a dog; an upper frame adapted to run on the track and supporting the dog in slots to permit an up and down motion; a lower frame swiveled to the upper frame; and

pulley-supporting mechanism carried by the lower frame and adapted to interact with the dog in locking the pulley in an elevated position.

Miller is the strongest prior art reference. But appellee's post art illustrations of modifications of Louden's patent and of Miller's structure (rendering the latter inoperative, appellant contends) are still stronger. Yet even against them, what Louden actually discovered in a field so pre-empted that he could hardly move without treading on others' toes, may readily be perceived. Pull the lower end of Miller's pivoted arm $K$ or of Louden's pivoted arm $N$ to the left, and the part of the arm below the pivot swings under and supports the pulley block. As the upper part of Miller's arm moves to the right, it pulls along the horizontally sliding bar $L$ until the pin projecting down from the base of the dog $M$ drops into the hole $e$ in the sliding bar, thereby locking the pulley in its elevated position. As the upper part of Louden's arm moves to the right, its curved end supports the dog until the latter drops and its peripheral surface engages the inner side of the upper part of the arm (at the junction of $N'$ and $N^2$), thereby locking the pulley in its elevated position. Locking the pulley in its elevated position was a result necessarily common to all of the many preceding successful hay-carriers. In a general sense they all attained that result by the interaction of a "dog" and a "pulley-supporting mechanism." Miller's way, as already stated, was the nearest to Louden's. Now in Miller's, if the pivoted lever $K$ be considered the "pulley-supporting mechanism," then the piece $M$ and the horizontally sliding bar $L$ must be taken as jointly constituting the "dog." If the piece $M$, which is actually the "dog," be accounted such, then the pivoted arm $K$ and the horizontally sliding bar $L$ must jointly be accepted as Miller's "pulley-supporting mechanism." But whatever nomenclature be applied to Miller's combination, the fact is patent that the locking result is secured by the interaction of three parts, $K$, $L$, $M$, which must be separately manufactured and then assembled so that each may have a free movement of its own. That is, there is no way by which $K$ and $L$, or $L$ and $M$, can be made integral or can be fixedly attached to each other without rendering the Miller device inoperative. By calling two parts one the fact is not changed that operativeness requires three separate and distinct parts. Louden, however, accomplished with two parts, in fact as well as name, what his most progressive predecessor took three to attain. Essentially the vice of appellee's comparison lies in the implication that what may be found in Miller's structure to be his "pulley-supporting mechanism" must therefore be the "pulley-supporting mechanism" of Louden's claims. Beneficent utilities, in the way of fewer parts to make, less work in assemblage, greater compactness resulting in savings of material and labor, increased certainty and ease of operation, are all apparent. If doubt existed that invention was in play in producing the direct swivel connection between the dog and the grappling hook to lock the pulley in its elevated position, it would be removed by the ten years wait, commercial success, and competitors' adoption of the disclosure.

[2] Is infringement avoided by making the base of the dog solid? Each claim calls for a "dog having an annular lip," and if the base of the dog is solid, there is no "annulus" or ring, the argument runs.

But the quotation from the claim is not exactly accurate. It is not a dog having a ring base to which is ascribed the function recited in each claim. No office is performed by the hole in the base. Every purpose of the patented device would as well be served if the hole be filled. In the claims the "dog" is limited by its described relation with the "pulley-supporting mechanism." That is, the "dog" of the claims is·not a dog with a functionless hole in the base, but a "dog having an annular lip adapted at all points on its circumference to engage the pulley-supporting mechanism." Looking to the structure and operation described in the specification, it is seen that, when the dog is in its upper position, only the outer edge of the circular base functions with the grappling hooks; and, when the dog is in its lower position, only the peripheral surface functions with the grappling hooks. Elements in claims should be read with reference both to the structure and the function given in the description of the invention. Dictionary definitions should not be applied to words in claims if the patentee in and by his drawings and descriptions of parts and functions has clearly supplied his own dictionary. General Electric Company v. Richmond Street & Interurban Railway Company, 178 Fed. 84, 102 C. C. A. 138; Chicago Woodenware Company v. Miller Ladder Company, 133 Fed. 541, 66 C. C. A. 517. In the latter case we said:

"In both claims it is evident that Miller differed with Webster and others as to the definition of a trestle. But, for all that, he should not be deprived of protection in his invention any more than for mistakes in orthography provided he did not misspell beyond recognition of the sense."

And when regard is given to Louden's disclosed invention, namely, the direct swivel connection, the interaction between the grappling hook and, first, the outer edge of the dog's circular base, and, second, the dog's peripheral surface, not only is the meaning of the claims clear, but the term "annular lip" does not seem particularly inept. Whether the "annular lip" be supported in its functioning position by a dog having a solid body or a skeleton frame is immaterial to the actual invention disclosed and claimed. Form is material only so far as it is essential to the operation, or indispensable, by reason of the state of the art, to the novelty of the claim. Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540. Here, neither operativeness nor prior art required the base of the dog to be cut out. Direct swivel connection between dog and grappling hook is Louden's property; and it has been unlawfully invaded by appellee.

Claims 3 and 4 call for "a pivoted hook or arm" to engage and support the pulley-block. Appellee uses a two-hook sidehold structure as his means for grappling and sustaining the pulley-block, and contends that he escapes these claims because they are limited to one hook or arm. First: Louden's patent shows two supporting arms, N and P. He states how, if the catch P be discarded, the carrier should be reorganized. He therefore disclosed that the invention of the direct swivel connection could be utilized with pulley-supporting mechanism of either one or two hooks or arms, preferably two. .Second: In the prior art the one-hook underhold structure and the two-hook sidehold

structure had both been used in hay-carriers as the pulley-supporting mechanism. Hoffman's patent, No. 167,763, two-hook sidehold; Miller's patent, No. 288,839, one-hook underhold. And Louden said in his specification that it was evident that his dog could be used with "any kind of pulley-supporting hook or catch adapted to co-operate with said annular lip," and that he did not wish "to be limited to the exact form of pulley-support set forth." Finally: The word "a" is primarily the indefinite article. From the preceding considerations, we judge that the word was used in these claims as the indefinite article and not as a synonym of the definite numeral one.

The decree is reversed with the direction to enter a decree in appellant's favor for an injunction and an accounting.