KENNICOTT CO. v. HOLT ICE & COLD STORAGE CO.

(Circuit Court of Appeals, Seventh Circuit.　October 5, 1915.　Rehearing Denied January 3, 1916.)

No. 2096.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—WATER-SOFTENING APPARATUS.

The Bruce patent, No. 912,802, for a water-softening apparatus, claim 5, was not anticipated, and discloses invention; also *held* infringed.

2. PATENTS ☞165—UTILITY OF INVENTION—NEW USES.

A patentee is not required to particularly point out and distinctly claim the uses to which his invention may be put, but some utility is to be presumed from the grant, and additional and new uses, even if unknown to the inventor, are within the patent, and may properly be considered in determining the status of the invention in the art.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. ☞165.]

3. PATENTS ☞170—INFRINGEMENT—STATUS OF PATENT IN THE ART.

In determining an alleged infringement, the court should have in mind the true worth of the claim as measured by the inventor's contribution to the art, and should remember that each claim of a patent is in law a separate invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 245; Dec. Dig. ☞170.]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Suit in equity by the Kennicott Company against the Holt Ice & Cold Storage Company. Decree for defendant, and complainant appeals. Reversed.

Russell Wiles, of Chicago, Ill., for appellant.

Dwight B. Cheever, of Chicago, Ill., for appellee.

Before BAKER and MACK, Circuit Judges.

BAKER, Circuit Judge. [1] Appellant's bill for alleged infringement of patent No. 912,802 for a water-softening apparatus, issued February 16, 1909, to Bruce, assignor, was dismissed for want of equity.

Eleven claims are stated in the patent; but the fifth is the only one said to be infringed. It reads as follows:

"5. In a water-softening apparatus, the combination with a precipitating tank, of a box supported above said tank to receive the water to be treated and provided with a relatively large opening discharging to said tank and a smaller discharge opening, a water supply pipe discharging into said box, a chemical solution holder discharging to said tank, means connected with said holder for proportioning the discharge therefrom, a regulating box communicating with said smaller discharge opening, and a float in the regulating box operatively connected with said proportioning means, for the purpose set forth."

In opening the specification Bruce stated his general purpose thus:

"My invention relates, particularly, to improvements in the mechanism commonly employed in industrial water-purifying apparatus, and surmounting the precipitating or settling tank, for automatically proportioning to the supply

of water to be treated the chemical used for treating it by mixture therewith in its course to the tank."

Then follows a lengthy detailed description of the specific construction of the various features of the apparatus, with numeral references to five sheets of drawings; but it is unnecessary to do more than epitomize from the specification a view of the apparatus and its method of operation so far as claim 5 is concerned.

At the top of the apparatus a supply pipe discharges water into a box. In the bottom of this receiving box are two openings, one much larger than the other. From the large opening the water flows directly into the precipitating tank at the bottom of the apparatus. From the small opening the water is conducted into a tank, which is much smaller than the precipitating tank, and which during the operation of the apparatus has no outlet. This smaller tank is above the precipitating tank. For convenience of description, Bruce in his specification gave to this smaller tank the name "regulating box." In the regulating box is a float. To the top of the float is attached a chain. This chain leads up over pulleys and down to the chemical holder, which also is above the precipitating tank. In the side and near the bottom of the chemical holder is a spout through which the liquid chemical is discharged into the stream of water flowing from the large opening in the receiving box into the precipitating tank. To the inner end of this spout is attached a short piece of flexible tube. To the other end of the flexible tube is attached a rigid tube. And to the open end of this rigid tube or "lift pipe," as it is called in the specification, is attached the chain that comes over the pulleys from the float in the regulating box. As the float rises, the lift pipe's open lip, which is at the surface of the liquid chemical, is lowered; and thus is obtained the result of "automatically proportioning to the supply of water to be treated the chemical used for treating it by mixture therewith in its course to the tank."

Claim 5 is the most generical one in the patent; and Bruce apparently had its structure and method of operation in mind when, in closing the specification, he declared:

"It will be understood from the foregoing description of the detailed construction and operation of the apparatus that my improvement, in its broadest sense, lies in the employment of a float-containing regulating box to cooperate with suitable means on or in the solution holder for properly proportioning to the outflow from the latter the flow of water into the regulating box to cause such water to raise the float in the same ratio and produce the same amount of solution discharge as the predetermined amount of water that flows into the regulating box."

Many ways of attaining the general result of softening hard water are shown to have been old. Two are relied on to defeat claim 5.

One is exhibited in patents to Greth, No. 749,728, January 19, 1904, and to Gaillet, No. 563,660, July 7, 1896.

Taking from them the structure most nearly corresponding to claim 5, we find: A supply pipe; a receiving box with a large and a small opening in the bottom; a precipitating tank into which water flows directly from the large opening; a chemical holder; and a small tank with no outlet, which is poised over the chemical holder by means

of a counterweight, and into which flows the water from the small opening in the receiving box. As the water flows in, it causes this small tank, which counsel for appellant conveniently name a "blind tank," to sink into the liquid chemical and displace a proportionate amount thereof, which flows over a lip in the rim of the chemical holder into the precipitating tank.

In the above Greth-Gaillet combination the movable blind tank serves two purposes: It serves, equally with a stationary blind tank, to hold the water that flows from the small opening in the receiving box; and, by reason of its descending movement due to the inflow of the water, it also serves as a displacer to cause the liquid chemical to overflow into the precipitating tank. In claim 5 the stationary blind tank performs only the first above named function; the second is accomplished through the progressively rising float's being operatively connected with other means for proportioning the discharge from the chemical holder. If the Greth-Gaillet combination were later than the patent in suit, it would not infringe. For a five-element structure is not within a six-element claim. And therefore the Greth-Gaillet structure is not an anticipation of claim 5.

Two Kennicott patents, No. 655,606, January 8, 1901, and No. 708,-717, September 9, 1902, and an apparatus described in a German publication by Wehrenfennig are the bases of the other alleged anticipation.

Kennicott shows: A supply pipe; a receiving box having in the bottom but one outlet, and that of such a size that the water maintains a constant level in the receiving box so long as there is a constant flow from the supply pipe; a precipitating tank into which flows all the water from the receiving box; a large chemical holder that discharges through a pipe in its bottom into a small chemical holder, in which a constant level is maintained by means of a float-controlled valve in the inlet pipe, and from which the chemical flows into the precipitating tank through a flexible tube, which is always submerged in the chemical, and to the inner end of which is attached a rope that goes up over pulleys and down to a float in the receiving box. If the influx from the supply pipe is constant, the float in the receiving box performs no office; and this should be the normal operation. If, however, the influx should increase, the rising float in the receiving box lowers the open end of the submerged flexible tube, and the increased head causes an increased outflow of chemical proportionate to the increased flow of water; and if the influx should decrease, the operation is reversed. Thus the effects of undesired fluctuations from the desired and intended constant level of water in the receiving box are counteracted. Kennicott's constant level receiving box is not the equivalent of Bruce's blind tank. Kennicott's corrective float is not the equivalent of Bruce's progressively rising float. The two types are utterly dissimilar in structure and in principle of operation. They have nothing in common but their separate lines of descent from a remotely common ancestor.

Wehrenfennig's device belongs to the Kennicott rate-of-flow type. It is identical in principle. Except for stress laid upon a useless de-

tail in structure, it would not further be noticed. A supply pipe discharges water into a primary receiving box. In the bottom of this are a large and a small opening, as in Bruce's receiving box. From the large opening the water falls directly into the precipitating tank, as in Bruce's apparatus. From the small opening the water is conducted into a small tank containing a float. By calling this small tank a "regulating box" with a "float operatively connected with chemical proportioning means," appellee obtains an anticipation in words. But it is purely verbal. For the water flows through an opening in the bottom of this small tank, and the Wehrenfennig float is the fluctuation correcting float of Kennicott. So this small tank is seen to be in principle only a secondary receiving box of the Kennicott type. Through both primary and secondary receiving boxes the rate of flow is the same, and the corrective float performs its function equally well in either box. This useless secondary receiving box therefore distinguishes Wehrenfennig from Kennicott not at all in mode of operation. And we are not acquainted with any authority that justifies appellee in applying to the Wehrenfennig structure the words by which Bruce defined his blind tank with its progressively rising float. We are not advised that a "regulating box" has a fixed meaning in mechanics, like cam, lever, pulley, shaft, wedge, etc. At all events a patentee is at liberty to supply his own dictionary; and a claim is neither enlarged nor limited by taking its terms in the sense given in the lexicon of the specification. Chicago Woodenware Co. v. Miller Ladder Co., 133 Fed. 541, 66 C. C. A. 517.

By removing the Greth-Gaillet blind tank from the chemical holder, making it a stationary member of the apparatus, and depriving it of its function as a displacer, Bruce obtained desirable results. If an emulsion or milk of lime is used as the precipitating agent (and with some hard waters it is the most efficient), settlement of the lime upon the blind tank would to some extent upset its accuracy as a measurer of the chemical discharge, and the blind tank itself is an obstruction to the most feasible way of introducing a mechanical stirrer into the chemical holder. Both of these objections are absent from the Bruce apparatus.

Appellee insists, however, that the proofs with respect to the use of milk of lime cannot properly be noticed, first, because "solution" is the only word appearing in the patent in connection with lime and other recommended chemicals, and second, because a stirrer is not included as an element in claim 5.

[2] First. If lime be added to a completely saturated solution of lime, strictly the solution ceases to be merely a solution. But even if the patentee is to be held to the utmost nicety in the selection of words, still the insistence is without weight. True, a patent covers, not what the patentee may actually have invented, but only the machine or process or composition that he "particularly points out and distinctly claims." Harder v. U. S. Piling Co., 160 Fed. 463, 87 C. C. A. 447. But he is not required particularly to point out and distinctly to claim the uses to which his invention may be put. Some utility is to be

presumed from the grant; other uses and advantages need not be enumerated; even if unknown to the inventor the additional and the new uses are within the patent; and they may properly be considered in determining the status of the invention in the art. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Company, 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527; Hogan v. Westmoreland Specialty Co., 167 Fed. 327, 93 C. C. A. 31.

Second. If only saturated solutions be used, a stirrer is not needed; and the apparatus of claim 5, complete within itself, is efficient to put a measured amount of the liquid chemical into the hard water. If solutions that are supersaturated and that cease therefore to be technical solutions be used, a stirrer may be helpful and even necessary; but the apparatus of claim 5, complete within itself, is efficient to put a measured amount of the liquid chemical into the hard water. A stirrer, whether mechanical or human, has only to do with the quality of the chemical discharged into the hard water, has nothing to do with the quantity. It (or he) is a separate auxiliary means, needful or needless for a different purpose as the case may be, while the apparatus of claim 5, self-contained, always stands ready to perform its independent office of measuring out any sort of liquid chemical discharge.

Though neither the Greth-Gaillet nor the Kennicott-Wehrenfennig type of water-softener is an anticipation, appellee contends that in view thereof no invention was exercised in producing the Bruce apparatus of claim 5. Water-softening was quite an old art. All apparatus were necessarily akin in that they proportioned the chemical to the hard water. Several distinct types had been developed and improved from time to time. But Bruce, we believe, brought forth a new genus in the family of water-softeners. In general the elements were old. Appellant concedes this except as to the blind tank with its float, the "float containing regulating box" of the patent's terminology. Respecting this feature the contention of appellant is that Bruce invented the water-measuring blind tank with its progressively rising float as a new instrumentality for causing the necessary movement of the chemical discharging means. He failed, however, to claim this element as an independent mechanical movement. It must therefore stand as a known, or at least an open, means of furnishing power. But, even so, Bruce was the first to bring it into a water-softening apparatus and there combine it with the necessary elements that were common to the art. This does not seem to have been an obvious thing to do. The record disposes us to doubt that appellee's modifications of the prior devices in order to show how easy it was for Bruce to go forward, were suggested by the old devices themselves or came from the knowledge and skill of the prior art. The record inclines us to believe that they originated in a study and an appreciation of the Bruce patent. For when we consider the capabilities and advantages of the new combination, Bruce's long connection with the practical art, his endeavors to build an apparatus that would handle clear solutions and also milk of lime as efficiently as this final apparatus does, and his failure in earlier attempts, we are driven from doubting that he should be classed as an

inventor. Pieper v. S. S. White Dental Mfg. Co., 228 Fed. 30, —— C. C. A. —— (at this term).

Appellee's apparatus follows Bruce's claim 5 at all points except with respect to the means for getting the chemical out of the chemical holder into the precipitating tank. In the Bruce apparatus, as hereinbefore we have seen, the progressively rising float in the water-measuring blind tank proportionately lowers the lip of the chemical discharger. If, instead of a lowering lip, a stationary lip in the rim of the chemical holder were made, and if the progessively rising float in the blind tank should cause a plunger to be lowered into the chemical so that a proportionate amount thereof should flow over the stationary lip, we would not hesitate to find infringement. For the Greth-Gaillet type proves that the stationary lip and the moving displacer were old and well known means for discharging the chemical; and the claim, relying in this respect on the general dictionary, employs the general term "means." Now appellee's discharging means are also of the displacer type. But, in lieu of a displacer of fixed dimensions, appellee utilizes a varying quantity of water. A conical valve, located over the chemical holder, is caused by the progressively rising float in the blind tank to open and discharge a continuously increasing quantity of water into the chemical holder, and this produces an overflow from the stationary lip in the rim. As this water displacer necessarily thins the formulated chemical solution, it is evident that a continuously increasing quantity of the holder's contents must be made to overflow in order that the same amount of chemical for a given quantity of hard water shall be discharged into the precipitating tank. In the use of this improvement of chemical discharging means appellee is protected by the Bartlett patents, Nos. 1,017,728 and 1,017,729, February 20, 1912. Is infringement avoided?

[3] In determining an alleged infringement the court should have in mind the true worth of the claim as measured by the inventor's contribution to the art, and should remember that each claim of a patent is in law a separate invention. Though it may sometimes happen that only verbal differences are found, the skillful solicitor in drafting claims on a combination invention will for each claim seize upon some particular feature to characterize and distinguish that claim from others, and will then combine it with its needful associates named in the broadest possible terms. Scaife & Sons Co. v. Falls City Woolen Mills, 209 Fed. 210, 126 C. C. A. 304; Railroad Supply Co. v. Hart Steel Co., 222 Fed. 261, 138 C. C. A. 23, and cases there cited.

What gives character and distinction to Bruce's claim 5 is the stationary water-measuring blind tank with its progressively rising float, operatively connected to any chemical proportioning and discharging means. In other claims emphasis is put upon various specific features, among them the "lift pipe" as the specific means of proportioning the chemical discharge. Claim 5 is plainly intended to secure the new specific "float-containing regulating box" in combination with any old or any new chemical discharging means and any old or any new forms of the necessary pipes and tanks. And appellee has seized upon the

characterizing thought of claim 5 in combination with the other necessary general elements (one of said general elements being present in a new form) and has thereby obtained the advantages first brought into the art by Bruce.

Nevertheless appellee strives to escape through certain phraseology of the claim and specification.

"Means connected with said holder for proportioning the discharge therefrom" is the claim's definition of the chemical discharging element; and the word "connected" affords the alleged loophole.

Appellee's stationary lip, like Greth-Gaillet's, is a part of the discharging means, and it is immovably connected with the chemical holder. Of course neither appellee's water displacer nor Greth-Gaillet's metallic displacer nor appellant's lift pipe that is flexibly attached to the discharge spout can immovably be connected with the holder. In this art a holder implies a contained chemical. It is only by operating immediately upon the chemical that any of said discharging means is effective. Manifestly the chemical must be held by the holder in position to be operated upon. And so the discharging means in connection with the holder effect the discharge. In that sense, the only working sense, the discharging means are connected, and they are in fact mediately through the contained chemical operatively connected, with the chemical holder.

When Bruce was describing his invention in its broadest aspect, in a part of the specification hereinbefore quoted, he stated that the inflow of water into his "float-containing regulating box" produced "the same amount of solution discharge"; and the last quoted words, with the emphasis on "same" and also on "solution," are said to offer another avenue of escape.

But the measure of the patentee's protection is the claim, not the specification. Looking to the chemical in its original dry form, we find that both Bruce's and appellee's apparatus put a predetermined amount into the hard water, say one pound to a thousand gallons. When the chemical is considered in the form of a solution or a milk, we find that the same result is accomplished through the same use, in each apparatus, of the blind tank with its progressively rising float to proportion and effectuate the chemical discharge. So both apparatus clearly respond to all the elements of the claim, including "means for proportioning the discharge" from the chemical holder.

Even if the words picked as aforesaid from the specification should be taken to limit the generic claim (which, however, is impermissible), the attempted deliverance fails. If the chemist at a manufacturing plant should prepare a certain amount of a certain solution, the apparatus of Bruce's claim 5 would discharge the same amount of the prepared solution for each thousand gallons of hard water. So would appellee's. In both, the means for proportioning and effecting the chemical discharge are operated by precisely the same mechanism to obtain precisely the same old general result together with precisely the same new advantages that Bruce contributed to the art. And the fact that appellee's water displacer as a discharging means mingles with

the solution as prepared according to formula and progressively weakens it so that a progressively larger amount of the holder's contents must be discharged, does not alter the other fact that the water displacer, as effectively as a metallic displacer or Bruce's lift pipe of other claims, utilizes Bruce's characterizing blind tank with its progressively rising float of claim 5 to discharge the same amount of the formulated solution for each given quantity of hard water.

The decree is reversed, with direction to grant the prayers of the bill.