GOODYEAR SHOE MACH. CO. v. SPAULDING et al.

SAME v. COOK.

(Circuit Court, D. Massachusetts. May 4, 1900.)

Nos. 1,008, 1,009.

1. PATENTS—INFRINGEMENT.

The question of infringement involves considerations of practical utility and of substantial identity, and therefore must be quantitative as well as qualitative; and infringement should not be found from the mere fact that the terms of a claim of complainant's patent are applicable to the defendant's device.

2. SAME—CONSTRUCTION OF CLAIMS.

Where the utility of a patented machine resides in a complete cycle of operations, and the patentee subdivides the whole process into parts, making certain mechanical operations, which do not stand alone in practical use, stand alone in claims, these claims must be construed with caution, where infringement of part only is charged, as it is by no means certain that the claims would have been allowed with any substantial omissions.

3. SAME—INFRINGEMENT—MACHINE FOR SEWING SHOES.

The French & Meyer patent, No. 412,704, for a shoe-sewing machine, construed, and held not infringed as to claims 1, 2, and 5.

4. SAME.

The Fowler & Warren patent, No. 564,986, for a shoe-sewing machine, construed, and held not infringed.

In Equity. These were suits in equity for infringement of two patents. On final hearing.

Elmer P. Howe and Benj. Phillips, for complainant.

Fish, Richardson & Storrow, for defendants.

BROWN, District Judge. The defendants in these two cases, respectively, use machines of the same construction. A single mechanical device is alleged to infringe two distinct patents. The Spaulding suit is on letters patent 412,704, dated October 8, 1889, to French & Meyer, for a shoe-sewing machine. Claims 1, 2, and 5 are involved. It is unnecessary to distinguish them, since a finding as to one is decisive as to all. The Cook suit is on letters patent 564,986, dated August 4, 1896, to Fowler & Warren, for a shoe-sewing machine. This patent has but one claim. In each case the sole question is of infringement.

The prior art is sufficiently presented in the old Dancell machine. The inventions of the patents, as well as the defendants' device, may be regarded as improvements upon Dancell. The Dancell machine was useful and operative, and was employed upon turned shoes to unite the sole and upper. Its chain-stitch forming operation is performed by the needle, the looper, and tension devices. On the needle is imposed the work of pulling thread from the supply through the tension devices, of drawing up the slack of previously drawn loops through the successive needle holes, and of firmly setting the stitches. Defects in this operation are that the pulling up of the slack from the loops through the needle holes and around the between substance, and setting the stitch by a downward pull, tend to cut the between substance, and to pull apart the sole and upper which are being sewed together; that the needle is forced to pull its thread against the strain of the tension device; and that there is reeving of the thread through the needle hook, resulting in a weakening or breaking of the thread. French & Meyer devised a "take-up" which relieves the needle of the task of drawing up the slack of the last loop and setting the stitch. This is the subject-matter of the Spaulding suit. They provided, also, means to relieve the needle from pulling thread from the supply; but this is not involved in the infringement charged in the Spaulding suit. The Cook case relates to a "pull-off" which relieves the needle of the task of drawing thread from the supply, and gives the needle slack thread, instead of thread under strain of the tension.

The defendants use the Dancell machine, with an addition on the front which may be called a "front take-up roll." The complainants say that this first pulls off thread from the tension, wherefore it is called a "pull-off" in the Cook case, and then takes up slack from the loop, wherefore it is called a "take-up" in the Spaulding suit. In other words, it is charged that it performs two distinct functions, each of which is within the prohibition of a patent in suit. The defendants deny infringement, and affirm that in the normal operation of their respective machines they do not in fact "pull off" or "take up" any appreciable amount of thread. Looking at both cases together, there is force in the complainant's contention that if the defendants' front take-up roll does not in fact take up, pull off, or both, it cannot give slack to the needle, and therefore is, upon the evidence in both cases, an entirely useless incumbrance. It must be said that the brief for the defendants does not give the court much aid in understanding why the device in controversy is employed by the defendants. The omission by the learned counsel for the defendants to add to a bare description of the parts and their operation a full account of their effect upon the thread is remarkable in a brief of 68 pages. It does not follow, however, that, because the complainants may have placed the defense in something of a dilemma by comparing the contentions of fact in the two cases, they are entitled to prevail in either case or in both.

If the contention of the complainants be accepted that it has proved both a pull-off action and a take-up action, there still remains the question of infringement in each case. The dilemma in which counsel have

sought to place the defendants is not a true dilemma, since it does not cover the entire case, but only a branch thereof, and since it does not exhaust the alternatives. There is still the possibility that the defendants' take-up roll may have some take-up action and some pull-off action, which, employed together, are of benefit to the machine of the defendants, but neither of which is an infringement of a patent. The defendants, while denying that the complainants have proved the facts upon which infringement is charged, contend that, even upon the state of facts claimed, there is no infringement. They contend that the complainants rest upon an erroneous construction of the patents in suit. We may assume, for the purposes of this decision, that a pull-off action of one-fourth or three-eighths of an inch is proven by the complainants in the Cook case, and a take-up action of one-fourth or three-eighths of an inch in the Spaulding case.

We will consider first the Cook case, which involves the pull-off and the Fowler & Warren patent. The claim is as follows:

"In a chain-stitch hook-needle sewing machine, the combination of tension, looper, hook needle, a pull-off mechanism between the needle and the tension, and actuating mechanism timed to cause the pull-off mechanism to make its pulling stroke after the hook needle has completed its loop-drawing stroke and while the loop is held under strain by the hook of the needle, substantially as described."

The novelty is not in the provision of a pull-off, since this was old, nor in the mechanism to actuate it, but resides in a new operative relation between the pull-off mechanism and the other stitch-forming devices, especially the needle, viz. the needle hook, after it has drawn out the loop, takes part in the pulling-off operation, by holding the loop against the pull of the pull-off truck, and thus compels the pull-off truck to draw its thread from the tension. The patent office referred the applicant to the French & Meyer patent (in suit in the Spaulding case) saying:

"If there be any substantive advantage derived from holding the thread in the hook of the needle when the pull-off is operated, rather than holding such thread by the shank of the needle, as in the reference, such advantage should be set forth in the description."

This was done in the following language:

"The advantage derived from holding the thread in the hook of the needle when the pull-off is operated, rather than holding such thread by the needle shank (for example, as in patent No. 412,704, dated October 8, 1889, to French & Meyer), is that a supply of thread for the loop about to be drawn is maintained in the preceding loop, which is impossible if the shank of the needle is relied upon to hold the thread," etc.

The specification says, also:

"After the needle makes its back stroke, drawing a new loop of thread through the stock and the preceding loop, the pull-off truck moves, and slackens the thread between the needle hook and tension, the preceding loop furnishing slack thread between the needle hook and the preceding stitch."

Therefore, as the needle goes through the stock, it has slack thread on both sides,—on one side from the previous loop, and on the other from the tension. We have now to consider only the slack on the tension side; for, in respect to such slack as is taken by the defend-

ant from the loop, there is no infringement in the Cook case. Assuming a pull-off action of one-quarter or three-eighths of an inch in the defendant's machine, and that this occurs while the loop is held under strain in the hook of the needle, and therefore is within the letter of the claim of the Fowler & Warren patent, does this constitute infringement? What was the object of Fowler & Warren in the provision of slack thread for the needle? The defendants say to reduce the rendering of the thread to a minimum. It was contemplated that the pull-off should draw from the tension the full length of thread required for the next stitch. For prevention of rendering the amount of thread drawn by the pull-off is material. I am of the opinion that the defendant has disproved the contention of the complainant that there was any rendering in the Dancell machine while the needle was going through the stock. The cross-examination of Mr. Metcalf is very convincing on this point. While the needle goes through the stock, the thread is firmly clamped by the leather,—this clamping effect being greater than the difference between the two resistances of the respective sides; and the thread is pulled equally from both sides. It is only after the needle withdraws from the leather that, in consequence of the unequal strain on the loop and tension sides, the thread draws across the needle hook, or renders. Therefore, if the supply of slack thread on the tension side is exhausted in going through the needle, rendering will begin in the defendant's machine practically as soon as the needle is withdrawn from the leather. This would be the case with the defendant's machine, if we assume pull-off action to occur as a matter of fact. The amount of slack, at most, is sufficient only to go through the leather, and there is a rendering immediately thereafter as in the Dancell machine. The device of the defendant, therefore, does not perform the function of preventing "rendering," which is a defect attendant upon the handling of the thread after it is withdrawn from the leather.

The defendant's machine and Dancell's are alike, in that the needle must pull off about an inch of thread against the strain of the tension, with accompanying rendering. In Fowler & Warren, the full length of thread for the stitch having been pulled off, there is enough slack to enable the needle to get nearly to the end of the stroke, when, both sides becoming taut, the needle sets the stitch under strain at the end of the back stroke with a minimum of rendering. Therefore we find that the defense, based upon the difference in the amount of thread drawn, is something more in respect to rendering than a question of degree. If the defendant does not pull off that part of the thread which the complainant draws to prevent rendering, and stops short of performing that function, he does not in any degree perform that function or effect that object, of the patented invention. To hold the defendant for infringement, the complainant must go further, and show that by drawing off that first quarter or three-eighths of an inch of slack, which is not the preventive of rendering, the defendant accomplishes something within the scope of the invention and of the protection of the patent. This the complainant undertakes to do, claiming that the defendant pro-

cures, by the amount of thread drawn, a substantial advantage in remedying another defect in the operation of a sewing machine of this class. This, however, is a defect not referred to in the patent, and therefore it rests upon the complainant to show clearly its existence, and also that it was remedied to some substantial extent by the invention of Fowler & Warren, and, further, to show that its existence in the defendant's machine is obviated in substantially the same way. It does not seem to me that this has been sufficiently established by the complainant.

The experts for the complainant have such skill in statement as to forbid any liberality in the construction of their language, which is presumably exactly coextensive with their meaning. Both Mr. Livermore and Mr. Metcalf say, in substance, that if the full tension strain, or a heavy tension strain, be added to the nip of the leather, there will be a very severe strain on the thread until the hook of the needle is withdrawn from the stock, and that the provision of a small amount of slack thread, say a quarter of an inch, is of great importance to obviate this. The difficulty with this evidence is in its application to this case. The term "tension" is constantly employed by complainant's experts to cover the spool and a further device called the "rear-spring take-up." The defendant insists upon a discrimination between them, which seems very material upon the question of the value of a small amount of pull-off action. If there is no heavy strain from this rear take-up, the evidence of the experts must be regarded as relating to a hypothetical case, which differs from this case in the facts. Mr. Metcalf testifies in the Spaulding case that in the defendant's machine the slackness of the previously drawn loop provides the needle on the loop side with enough thread to go through the leather. The defendant has shown that in his device the supply for the needle on the tension side comes from the rear take-up during the passage of the needle through the leather. The needle, therefore, pulls against the full force of the tension only when it has receded from the leather. My attention has not been called to any evidence to the effect that, during the delivery of thread by the rear take-up, there is therefrom any important strain upon the thread. The defendant asserts that, even if his device, through a pull-off slide, obtains thread on the thread-supply side under a lighter resistance than the spring of the rear take-up from which it would otherwise draw it, this is a matter too trivial for consideration. Whether, as a practical matter, this is so, or not, I am unable to determine, and a determination of this question in the complainant's favor would seem necessary.

The complainant's proposition that infringement is qualitative, and not quantitative, cannot be accepted. Infringement should not be determined by a mere decision that the terms of a claim of a valid patent are applicable to the defendant's device. Two things are not necessarily similar in a practical sense because the same words are applicable to each. The question of infringement involves considerations of practical utility and of substantial identity, and therefore must be quantitative, as well as qualitative. As the defendant Cook does not use a machine which accomplishes the avowed object of

Fowler & Warren,—to prevent rendering,—and as no evidence has been brought to my attention showing that his machine infringes the Fowler & Warren patent in any other substantial respect, I must hold, even granting that the complainant has proved the facts upon which it relies, that it has not established infringement.

We will now consider the Spaulding suit, which involves the French & Meyer patent, and the "take-up" which draws up slack from the last loop and sets the stitch. The material parts of the claims in issue are sufficiently set forth in the following extract from claim 1:

"And a take-up, as $b^2$, a cam, as $C^1$, and connecting devices intermediate the said cam and the said take-up; the said cam through the said connecting devices actuating the said take-up to pull upon the loop of needle thread about the shank of the needle while the needle is in the stock and holds the said loop upon its shank; the said take-up drawing the said loop about the shank of the needle, as described, to set the last stitch, of which the said loop forms a part, without straining the between substance; the said stitch being set before the loop to form the next stitch is drawn through it,—substantially as described."

Assuming a take-up action of one-quarter or three-eighths of an inch in the defendants' machine, we find therein, as in French & Meyer, a take-up, actuated by a cam, which serves to pull upon the loop of needle thread. This pulling movement begins, however, before the needle enters the stock, but probably continues while it is in the stock, so that the language of the claim, "to pull upon the loop of needle-thread * * * while the needle is in the stock," seems applicable to the defendants' device. Mr. Metcalf says that, though it would be fair to say that the take-up action begins earlier in the defendants' machine than in French & Meyer's, he is sure "there can be no reasonable doubt that in defendants' machine, in actual operation, the needle is always in the leather during the take-up operation." As no contradiction of this is called to my attention, I do not think any substantial difference is shown to exist in this particular. The question of infringement must therefore turn upon the words, "to set the last stitch." Although Mr. Livermore says that he understands, by "setting the stitch," "taking back or pulling upon the thread which enters into the stitch," I am satisfied that in the claim it means pulling the loop taut about the needle shank, and that it would be a violation of ordinary usage of terms, as well as of the particular use of terms of the patent, to say that there was a "setting the stitch," so long as there was any substantial slackness of the loop around the shank of the needle. Mr. Browne, defendants' expert, testifies that in the defendants' machine there is always a substantial slackness, and Mr. Metcalf, complainant's expert, testifies that in the defendants' machine "the needle is enabled to get its loop through the leather without encountering any substantial resistance in addition to the friction of the leather. This follows because the slackness of the previously drawn loop is sufficient to furnish the needle with slack thread on one side of its throat," etc. The defendants' machine leaves enough slack on the loop side to go through the leather. It does not, therefore, set the stitch by a take-up.

It should be observed, furthermore, that, to the full operation of the French & Meyer machine, the take-up must not only pull the thread taut about the needle (in the language of the specification, "the take-up itself alone performs the duty of setting the stitch"), but it must go on and draw from the supply the thread for a new stitch. The claims in suit, therefore, relate to a part only of the cycle of operations of the patent; other claims, not in suit, relating to the thread-drawing movement produced by the cam, and to other auxiliary devices for handling the thread. Where the utility of a patented machine resides in a complete cycle of operations, and a patentee subdivides the whole process into parts, making certain mechanical operations, which do not stand alone in practical use, stand alone in claims, these claims should be construed with some caution. Because the patent office has allowed a claim for a device capable of performing a number of functions, it by no means follows that this claim, with any substantial omissions, would have been allowed. The patent is not broadly for a cam-actuated take-up, pulling up some slack thread while the needle is in the stock. Mr. Livermore says that:

"Defendants' machine clearly embodies the subject-matter of claims 1, 2, and 5 of the French & Meyer patent, unless limited by construction of the language of the patent to a machine in which the take-up operates to shorten and pull upon the loop to the strain determined by the tension of the machine."

But is not this the fair construction? To escape it we must simply ignore the setting of the stitch, which the pat tee has specified, and thus broaden the claim. Moreover, this se , of the stitch by the take-up is a substantial thing, and is not pe. med by the defendants' machine, in which the needle sets the stitch by a downward pull, with the disadvantages thereof. There can be no contention that the whole cycle of defendants' operation is that of French & Meyer, and one function which is claimed is surely not performed by the defendants. The setting of the stitch by the take-up seems to be of the essence of French & Meyer's mode of operation. In this way is secured the upward pull in the direction to draw together closely the layers of material without cutting the between substance, and the drawing up of the last stitch by a direct pull through the needle hole preceding the one in which the needle is standing, thus avoiding rendering over the between substance. The defendants, it is true, may have benefited to some slight degree by a part performance of some operations performed by the complainant's device. But the patentee receives the full measure of the legal protection to which he is entitled when others are prohibited from doing that which he has claimed. If some crumbs of benefit to other inventors may fall between the lines of his patent, this is no reason for enlarging his claims. I am of the opinion that the complainant in the Spaulding case is in the familiar situation of standing upon its own view of the breadth of the invention, rather than upon the rights conferred by the patent.

In each case I find no infringement. The bills will be dismissed.