**GRANT v. KOPPL.**

No. 8622.

Circuit Court of Appeals, Ninth Circuit.

Sept. 16, 1938.

Lyon & Lyon, Leonard S. Lyon, and Henry S. Richmond, all of Los Angeles, Cal., for appellant.

Ford W. Harris, Clarence F. Kiech, Ward D. Foster, and Ford W. Harris, Jr., all of Los Angeles, Cal., for appellees.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a final decree of the District Court holding that appellees have not infringed patent No. 1,844,354 for an expanding well reamer granted to appellant February 9, 1932.

The patented device is primarily for use in rotary oil well drilling. In drilling an oil well the casing is lowered into the well as the drilling progresses to prevent the walls of the well from caving into the bored hole. Further drilling operations below the casing are then necessarily carried on at reduced diameter. To increase the bore below the casing so that the casing may be lowered, an expanding well reamer is employed. Such a device must be so constructed that its diameter, while being lowered, is small enough to pass through the well casing; but it must be capable of expanding upon reaching its operating position so that its cutters may increase the bore of the drilled hole below the casing.

In the patented device in suit, several cutters are arranged around the central axis of the tool, each revolving, when operating, on separate mandrels or pins. Figs. 1 and 2 following are patent drawings of the device showing, in Fig. 1, a cutter on its separate mandrel in its cutting position, and, in Fig. 2, the cutter in its retracted position on the mandrel.

Fig. 1.  Fig. 2.

Mandrel

Cutter

Mandrel

Spring

As will be noted from an examination of the above drawings, the extension and retraction of the cutting elements of the tool is accomplished by causing the roller cutters to slide up and down on their individual mandrels. In the retracted position shown in Fig. 2, the cutter fits on the mandrel in such a manner that the parts of the cutter bore having the smallest diameter fit over the parts of the mandrel having the smallest diameter, and the wide part of the cutter bore fits over the wide part of the mandrel. In the extended cutting position shown in Fig. 1, the cutter is pushed and held upward by a spring so that the parts of the cutter bore having the smaller

diameter bear on the parts of the mandrel having the largest diameter, and the parts of the cutter bore having the larger diameter fit over the recessed part of the mandrel having the smallest diameter.

When the tool is being lowered into the well casing it is in its retracted position shown in Fig. 2. Upon emerging from the casing into the bore below, the spring aids in forcing the cutters upward into their cutting position against the formation although it is claimed that the spring is not a necessary part of the invention. As the formation is cut away, the cutters attain their extended position. When the tool is removed from the well, the cutters

contact the lower end of the casing which forces them down into their retracted position.

In a prior patent, No. 1,777,559, granted appellant on October 7, 1930, for an underreamer, the same means for throwing the cutters into their extended and eccentric positions and returning them to their retracted positions are employed. The principal differences in construction between the device of the patent in suit and the appellant's prior Grant underreamer are that in the latter, the cutters do not revolve on individual mandrels but on eccentric bearings on the main shaft, which constitutes a single mandrel, and the plurality of cutters are placed one above the other on the tool. See Fig. 3 following, which is a patent drawing of the prior grant underreamer.

Fig. 3.

Cutter

Cutter

Main shaft.

The primary object of the prior Grant underreamer, as stated in the patent, is "to provide a tool of the character described having a roller so arranged that it may be retracted permitting its passage through well casing and which will be expanded laterally upon emergence therefrom". The means whereby the tool may be forced into its retracted and expanded position form the essence of the invention claimed.

The patent in suit purports "in some of its features" to be an improvement over appellant's prior underreamer. The distinction over the prior Grant device is stated in the patent: "A distinctive feature of the present invention, as compared with that of a said prior application, is the provision of several cutter carrying mandrels in a single body, the several mandrels and their respective cutters being arranged op- posite each other around the central axis of the tool. Said prior application shows a plurality of cutters arranged, when in expanded position, around the central axis; but, all such cutters or cutter carriers surrounding the single mandrel body, the cutters or cutter carriers are, in that case, spaced from each other longitudinally along the mandrel body. In contradistinction, the present invention provides an underreamer body and provides what may be termed, for purposes of clear verbal distinction over the specific form of the prior invention, a plurality of mandrel pins arranged around the central axis and opposite each other, which mandrel pins are surrounded by the cutters or cutter carriers."

As to the alleged improvement over this prior device, appellant states: "The distinctive feature of the patent in suit is stated to reside in provisions of several individual cutter carrying mandrels arranged in opposition around the body and an individual cutter surrounding and working upon each of the several mandrels. The result is a structure in which each cutter operates, both for expansion and contraction and for wall cutting, on its own individual mandrel, and the mandrels and cutters are set in opposition around the body at a common level."

Appellees contend that in view of the prior art, there is no patentable improvement involved in placing several cutters on individual mandrels on the same level to utilize the means of the prior Grant patent for contracting and expanding the tool. (As in patents to Woolridge, No. 1,376,302; Meredith, No. 1,532,917; Blanchard, No.

1,548,578; and Reed, No. 1,642,463) Appellant contends, however, that in none of the devices of the prior art do the cutters revolve on individual mandrels, but that in the prior art patents showing cutters on individual pins placed at a common level around the tool (such as patents to Blanchard, No. 1,548,578, and to Woolridge, No. 1,376,302, for example) the cutters move into position with the mandrels instead of rotating thereon. But no particular advantage or patentable novelty is claimed in the patent in regard to this feature of the cutters except in connection with the function of bringing the cutters in and out of cutting position. We do not decide, however, whether or not the patent in suit is invalid because of double patenting, for in view of our conclusion as to infringement such a decision is unnecessary. But as the prior art discloses roller cutters arranged around a tool at a common level the patent cannot be given a broad interpretation to cover this feature of the prior art. Nor can the patent in other respects be given a broad construction. The means disclosed by appellant for retracting and extending its cutters is similar to other means disclosed in the prior art. In the Meredith patent, No. 1,532,917, for a rotary underreamer, granted April 7, 1925, the cylindrical cutters are mounted in blocks which are moved outward as they move upward against a wedge shaped portion of the tool. The cutters are mounted on mandrels which rotate with and as a part of the cutter. In the Blanchard patent, No. 1,548,578, issued August 4, 1925, for an underreamer, the cutting cylinders, or rollers, are moved upward and forced outward by a wedge shaped portion of the tool, with the point downward. The cutters revolve with their pins and not on mandrels. The invention, if any, in the patented device lies in the particular means for retracting and extending the cutters shown in the patent. The operation of the device, as stated, is by the moving of the cutter along the mandrel against the wedge shaped surface of a portion of the mandrel, leading from a smaller to a larger diameter thereof. We conclude that the patent is entitled only to a narrow range of equivalents. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523.

### Infringement.

The alleged infringing device has cutters which rotate on individual mandrels set on the underreamer at a common level. Figs. 4 and 5 below show a cutter and mandrel of the alleged infringing device on the underreamer.

Fig. 4.          Fig. 5.

The cutting surface of the appellees' cutters is eccentric to its individual mandrel as shown in Fig. 6 below:

Fig. 6.

As can be seen by Fig. 6, when the flat sides of the cutters face outward the underreamer is able to pass through the well casing. When the rounded sides of the cutters face outward the tool cuts the formation to be reamed. To withdraw the underreamer from the well the cutters must be turned with their flat surfaces outward so that the tool can pass through the casing. This is accomplished by placing a stop shoulder, or cam, on the bottom of each cutter which is fashioned to engage a cam or stop shoulder on a collar below each cutter. When the tool is pulled upward out of the well the cutters are forced down by the drag of the formation, until the cams contact each other, and the cutters are finally brought to rest in the position shown in Fig. 4 with their flat sides outward.

It is true, as appellant states, that appellees' cutters are in upward position when cutting and in a downward position when retracted prior to the removal of the underreamer from the well. But the mode of operation and the means used in expanding and contracting appellees' tool, are essentially different. As may be seen by a comparison of the above drawings of appellant's and appellees' devices, the cutters on appellee's device move to their retracted and extended positions primarily because they are flattened on one side and rounded on the other. This is not true of the cutters on appellant's device, which, as we have shown, move to their retracted and extended positions because the individual mandrels are made with recessed parts and the cutter bores are so fashioned that they have larger diameters in certain parts of the bores, and in sliding upward from one position to another the cutters are forced outward.

We note that appellant contends that the claims of the patent in suit read upon appellees' device. We may assume that this is true, especially as to claim 9. But infringement is not a mere matter of words. Henderson v. Welch Dry Kiln Co., D.C., 26 F.2d 810, 814; Goodyear Shoe Mach. Co. v. Spaulding, C.C., 101 F. 990, 994; Linde Air Products Co. v. Morse Dry Dock & Repair Co., 2 Cir., 246 F. 834, 838; Bird v. Elaborated Roofing Co. of Buffalo, 2 Cir., 256 F. 366, 373. Here, we hold that the mode of operation is different and that there is no equivalency of means. It is not necessary to discuss the claims separately or in detail. We agree with the finding of the trial court that there is no infringement.

Decree affirmed.