**MATTEL, INCORPORATED, a corporation, Plaintiff,**

v.

**LOUIS MARX & CO., Inc., a corporation, Charles Salerno, an individual, dba Marx Toys and dba Homewood Distributors, and F. W. Woolworth Company, Inc., a corporation, Defendants.**

**No. 1313–59–Y.**

United States District Court
S. D. California,
Central Division.

Dec. 29, 1961.

Herzig & Jessup by Albert M. Herzig, Los Angeles, Cal., for plaintiff.

James & Franklin by Maxwell James, New York City, Lyon & Lyon by Roland N. Snoot, Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

In an old patent case there is found the following statement which has become almost axiomatic:

> "at all events a patentee is at liberty to supply his own dictionary; and a claim is neither enlarged nor limited by taking its terms in the sense given in the lexicon of the specification." (Kennicott Co. v. Holt Ice & Cold Storage Co., 1915, 7 Cir., 230 F. 157, 160)

The case has been followed. See the writer's opinion in Martin v. Ford Alexander Corporation, 1958, D.C., 160 F. Supp. 670, 682, and cases cited in Footnote 33. I there said:

> "In the law of patents we should eschew the tyranny of words. It is an accepted axiom that 'a patentee is at liberty to supply his own dictionary'. This is indicative of the fact that the courts in inter-

preting patents are endeavoring to give effect to the meaning of the claims,—whether the terms used by the inventor were ordinary words or words which had a meaning other than the meaning attributed to them by lexicographers, but which was apparent from the context in which the inventor used them." (p. 682)

In applying the principle the object has been to give effect to the meaning of the claims and not to use words either to hobble or expand the scope of the claims. Thus in Cincinnati Rubber Mfg. Co. v. Stowe-Woodward, Inc., 6 Cir., 1940, 111 F.2d 239, 242, the Court refused to limit the scope of the invention to the technical meaning of the word "rock". And in Martin v. Ford Alexander Corporation, supra, I refused to limit the scope of the invention to the use of a "strain gauge".

In these and other cases the context showed that a broad interpretation of the words should be given lest the scope of the invention be unreasonably limited or destroyed. But the reverse of the principle is also true. If the inventor, especially when dealing with a device in a crowded field, uses special words which limit the scope of his invention he *should be held* to the limitation.

In the case before us, involving Patent No. 2,892,289 for a toy gun, issued to John W. Ryan on June 20, 1959, the problem turns around the meaning of the words "oscillating inertia means" occurring in Claims 5, 6 and 7 in dispute. The claims are printed in the margin.[1]

■ To "oscillate" · means to swing backwards and forwards like a pendulum. I am satisfied from the evidence before me that this invention should be limited in scope to the exact meaning of the word "oscillate" and that a device like that manufactured by the defendant, which achieves a similar movement but does it by "rotation or reciprocation", does not infringe. It is true that the three claims read upon the accused device but that, in itself, is not conclusive.

■ As the Court of Appeals for the Ninth Circuit stated in a case decided on December 12, 1961, Pursche v. Atlas Scraper and Engineering Co., Nos. 16410, 16411, the fact that the claims read upon a device

"is not conclusive on the question of infringement. 'Infringement is not a mere matter of words.' Grant v. Koppl, 99 F.2d 106, 110 (9th Cir. 1938). In order to constitute infringement there must also exist substantial identity of function, means, and result. Martin v. Ford Alexander Corp., 160 F.Supp. 670 (D.C.S.D. Calif.1958)." (Slip Decision, p. 21–22)

The elements of the claims in suit may be summarized in this manner:

Claim 5 describes:

1. The rack, a linear rack;

2. The power means which moves the rack, which is a spring;

3. The driven means for converting the movement of the linear rack into a cyclical movement;

4. A connected cyclical sound producing means; and

5. A governor, an oscillating inertia means.

1. "5. In a toy gun, a longitudinally movable elongated rack, power means moving said rack in one longitudinal direction; means driven by said rack for converting said longitudinal movement into cyclical movement to operate a cyclical sound-producing means connecting with and operated by said driven means, and oscillating inertia means connected with said driven means to limit the rate of cyclical movement of said driven means and the rate of longitudinal movement of said rack.

"6. The device of claim 5 wherein said power means comprises a tension spring and manually operable means are provided to move said rack longitudinally against the force of said tension spring, and wherein trigger means are provided to selectively hold said rack against longitudinal movement by said spring.

"7. The device of claim 5 wherein said inertia means comprises an inertia mass driven in oscillating movement by said rack."

Claim 6 adds a trigger means. As the other devices also have such means, this feature loses all significance.

Claim 7 states, in connection with Claim 5, that an oscillating inertia means contains mass. As all such devices contain this, whether it is reciprocating inertia means or a rotating inertia means or an oscillating inertia means, this feature also loses significance.

These elements exist in the accused device but they function differently even if they achieve the same result. (See, Westinghouse v. Boyden Power Brake Co., 1898, 170 U.S. 537, 569, 18 S.Ct. 707, 42 L.Ed. 1136; Air Devices, Inc. v. Air Factors, Inc. 9 Cir., 1954, 210 F.2d 481, 483) Primarily the basic element, the "oscillating inertia means" does not exist in the accused device. The result is there achieved by a rotating or reciprocating means. And one of the plaintiff's experts admitted that while the patented device is simple and can be built economically the accused device is more complicated in construction and more expensive to produce.

Before the Patent Office the inventor sought a claim (rejected Claim 13) that was broad enough to have covered oscillating and rotating means. The Claim was rejected for the narrower claims expressed in 5, 6 and 7. To expand the Claim now to what the inventor sought before the Examiner would allow him to recapture what he there lost. This cannot be done. (Computing Scale Co. of America v. Automatic Scale Co., 1907, 204 U.S. 609, 617, 27 S.Ct. 307, 51 L.Ed. 645; Joyce, Inc. v. Solnit, 1939, D.C., 29 F. Supp. 787, 788; Air Devices, Inc. v. Air Factors, Inc., supra p. 482–483; D & H Electric Co. v. M. Stephens Mfg., Inc., 9 Cir., 1956, 233 F.2d 879, 883–884)

If we interpret the Claims in suit as requested by the inventor we would disregard the estoppel which arose from his acceptance of the limited claims. Furthermore, the claims would be invalid for anticipation as their teachings would have to be held foreshadowed in some of the patents pleaded, especially Douglas, No. 2,790,260; Berger, No. 2,574,952; Daspett, No. 1,863,438; Fujiwara, No. 2,446,698; Sigg, No. 2,684,554; and defendant's patent, Staller, No. 2,899,766, and prior reduction to practice.

The conclusion we reach that the patent is valid but not anticipated or infringed is a practical and reasonable recognition of the fact that we have here a case of two inventors who invented somewhat similar devices, each of which was found by the Patent Office sufficiently different to warrant recognizing as invention. The following colloquy which occurred in the course of the trial implies a recognition of this fact:

"The Court: * * * In the law of copyright, or intellectual property, we recognize contemporaneous conception. And the law of patents that is not recognized. In the law of copyright, * * * two persons can conceive the same idea at the same time, yet each not being barred from claiming copyright of his own idea. In the law of patents that is not a fact. If a person secures a patent as of a certain date, unless you can defeat it by showing prior use by somebody else, as was done in the Piet case, and other cases, the man who secures the patent is entitled to priority over everybody else.

"And the only reason, I believe, that you gentlemen are going into these details about prior conception is to add strength to your various contentions that these were not only different devices, but were conceived independently of one another.

"Am I correct?

"Mr. Herzig: I think it is fair to say *they were conceived independently of one another, yes.* I think that Ryan conceived way before the Frye device came on the market. And I think that Mr. Staller conceived when he said he conceived, in May, if I remember correctly, in 1955."

And this decision is a conclusive finding of that fact.

The grounds just stated make it unnecessary to comment on the additional grounds of invalidity alleged in Paragraph IX of the defendant's Answer. Judgment will, therefore, be for the defendant.